**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee*,

v.

RICARDO GUIZAR-RODRIGUEZ,
          *Defendant-Appellant.*

No. 16-10507

D.C. No.
3:16-cr-00022-
MMD-VPC-1

OPINION

Appeal from the United States District Court
for the District of Nevada
Miranda M. Du, District Judge, Presiding

Argued and Submitted February 15, 2018
San Francisco, California

Filed August 17, 2018

Before: Carlos T. Bea and N. Randy Smith, Circuit Judges,
and David C. Nye,[*] District Judge.

Opinion by Judge N.R. Smith

---

[*] The Honorable David C. Nye, United States District Judge for the District of Idaho, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming a conviction for illegal reentry into the United States in violation of 8 U.S.C. § 1326, the panel held that battery committed with the use of a deadly weapon under Nevada Revised Statute § 200.481(2)(e)(1) is categorically a crime of violence as defined in 18 U.S.C. § 16(a).

### COUNSEL

Cristen C. Thayer (argued) and Amy B. Cleary, Assistant Federal Public Defenders; Rene L. Valladares, Federal Public Defender; Office of the Federal Public Defender, Reno, Nevada; for Defendant-Appellant.

Elizabeth O. White (argued), Appellate Chief; United States Attorney's Office, Reno, Nevada; for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

N.R. SMITH, Circuit Judge:

As we have previously determined, "even the least touching with a deadly weapon or instrument is violent in nature." *United States v. Grajeda*, 581 F.3d 1186, 1192 (9th Cir. 2009). Thus, battery committed with the use of a deadly weapon under Nevada Revised Statute § 200.481(2)(e)(1) is a crime of violence as defined in 18 U.S.C. § 16(a).

## I.  FACTS AND PROCEDURAL HISTORY

In 1998, Ricardo Guizar-Rodriguez, a citizen of Mexico, was convicted in Nevada of battery committed with the use of a deadly weapon. *See* Nev. Rev. Stat. § 200.481(2)(e)(1). The Immigration and Naturalization Service ("INS") determined that battery committed with the use of a deadly weapon under Nevada law was an aggravated felony and ordered Guizar-Rodriguez's removal on that basis.[1] Guizar-Rodriguez was removed from this country.

---

[1] In the context of this case, a "crime of violence" is an "aggravated felony." Title 8, Section 1227(a)(2)(A)(iii) of the U.S. Code grants the Attorney General the power to deport "[a]ny alien who is convicted of an aggravated felony at any time after admission." Title 8, Section 1101(a)(43)(F) of the U.S. Code defines an aggravated felony to include "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." Title 18, Section 16(a) of the U.S. Code defines a crime of violence to include "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

In 1999, Guizar-Rodriguez illegally reentered the United States. In 2004, Guizar-Rodriguez was again removed, this time based on his illegal reentry. After his second deportation, Guizar-Rodriguez again reentered the United States.

On April 20, 2016, a Nevada grand jury indicted Guizar-Rodriguez with unlawful reentry. Guizar-Rodriguez moved to dismiss the indictment on the ground that his initial deportation was unlawful, because battery committed with the use of a deadly weapon under Nevada law is not an aggravated felony. The district court rejected this argument. Consequently, Guizar-Rodriguez pleaded guilty but reserved the right to challenge the district court's ruling on appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review de novo the denial of a motion to dismiss an indictment under 8 U.S.C. § 1326 [for illegal reentry] when the motion is based on alleged due process defects in an underlying deportation proceeding." *United States v. Vega-Ortiz*, 822 F.3d 1031, 1034 (9th Cir. 2016) (quoting *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)). Similarly, we review de novo a district court's determination that a state crime is a crime of violence. *United States v. Rivera-Muniz*, 854 F.3d 1047, 1048–49 (9th Cir. 2017).

## III. DISCUSSION

### A.

"A defendant charged with illegal reentry under 8 U.S.C. § 1326 has a Fifth Amendment right to collaterally attack his removal order, because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). Section 1326(d) allows a defendant collaterally to attack the underlying deportation order if "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." In this appeal, we need review only whether the entry of Guizar-Rodriguez's initial removal order was fundamentally unfair.[2]

"An underlying order is 'fundamentally unfair' if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Id.* "Where a prior removal order is premised on the commission of an aggravated felony, a defendant who shows that the crime of which he was previously convicted was not, in fact, an aggravated felony, has established both that his due process rights were violated and that he suffered prejudice as a result." *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015). Thus, Guizar-Rodriguez is entitled to a dismissal

---

[2] Before the district court, the parties disputed only whether the removal order was fundamentally unfair.

if his conviction for battery with the use of a deadly weapon was not a crime of violence.

To determine whether battery committed with the use of a deadly weapon is a crime of violence, "we apply the categorical and modified categorical approaches." *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010) (quotation marks omitted). This requires following a three-step process. *Descamps v. United States*, 570 U.S. 254, 257 (2013). First, "we compare the statute of conviction to the removal statute's definition of aggravated felony." *Carlos-Blaza v. Holder*, 611 F.3d 583, 587 (9th Cir. 2010). "If every conviction under the statute of conviction is also an aggravated felony, then there is a 'categorical match' and the defendant's conviction perforce qualifies as an aggravated felony." *Id.* Second, if section 200.481(2)(e)(1) is "'overbroad,' meaning that it criminalizes conduct that goes beyond the elements of the federal offense," we then must determine "whether the statute is 'divisible' or 'indivisible.'"[3] *Lopez-Valencia v. Lynch*, 798 F.3d 863, 867–68 (9th Cir. 2015) (quoting *Medina-Lara v. Holder*, 771 F.3d 1106, 1112 (9th Cir. 2014)). Third, if the statute is divisible, "we may examine certain documents from the defendant's record of conviction to determine what elements of the divisible statute he was convicted of violating." *Id*. at 868. As we explain below, we need not determine whether the statute is divisible, because Nev. Rev. Stat. § 200.481(2)(e)(1), battery committed with a deadly weapon, is a categorical crime of violence.

---

[3] A statute is divisible when it "lists multiple, alternative elements, and so effectively creates several different crimes." *Descamps*, 570 U.S. at 264 (quotation marks and ellipsis omitted).

B.

A crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[4] 18 U.S.C. § 16(a); 8 U.S.C. § 1101(a)(43)(F) (defining an "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at least one year"). "'[P]hysical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States* 559 U.S. 133, 140 (2010) (original emphasis omitted). Guizar-Rodriguez must show that there is "a realistic probability, not a theoretical possibility, that [Nevada] would apply its statute to conduct that falls outside [this definition]." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). Ordinarily, "he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the [overbroad] manner for which he argues." *Id.* However, "when a 'state statute's greater breadth is evident from its text,' a [defendant] need not point to an actual case applying the statute of conviction in a[n overbroad] manner." *Chavez-Solis v. Lynch*, 803 F.3d 1004, 1010 (9th Cir. 2015) (quoting *United States v. Grisel*, 488 F.3d 844, 850 (9th Cir. 2007)). In determining whether the statute's overbreadth is "evident," we look both to the text of the statute and to state court interpretations of the statute. *United States v. Strickland*,

---

[4] Title 18, Section 16(b) of the U.S. Code also includes within the definition of a crime of violence "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." However, that subsection was held unconstitutionally vague by the Supreme Court in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018).

860 F.3d 1224, 1226 (9th Cir. 2017). Here, Guizar-Rodriguez contends that, based on Nevada Supreme Court precedent, section 200.481(2)(e)(1) is not a crime of violence.

Section 200.481(2)(e)(1) prohibits "any willful and unlawful use of force or violence upon the person of another . . . committed with the use of a deadly weapon . . . [that results in] [n]o substantial bodily harm to the victim." § 200.481(1)(a), (2)(e). To commit simple battery in Nevada, the "force need not be violent or severe and need not cause bodily pain or bodily harm." *Hobbs v. State*, 251 P.3d 177, 179 (Nev. 2011). As a result, simple battery in Nevada would not ordinarily be a crime of violence under *Johnson*'s definition of "physical force." *See Grajeda*, 581 F.3d at 1192. However, "even the least touching with a deadly weapon or instrument is violent in nature," because it "demonstrates at a minimum the threatened use of actual force."**[5]** *Id.* Thus, the outcome of this case depends on Nevada's definition of "use of a deadly weapon" in section 200.481(2)(e). If Nevada law requires actual use of a truly "deadly" weapon, then it is a crime of violence. *Grajeda*, 581 F.3d at 1192.

1.

Nevada courts have an extensive common law tradition of defining the term "deadly weapon." "As early as 1870, [the Nevada Supreme C]ourt defined objects as 'deadly weapons'

---

**[5]** *Grajeda* predates the Supreme Court's decision in *Johnson v. United States* which clarified that "'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." 559 U.S. at 140. However, the *Grajeda* court reasoned that "even the 'least touching' with a deadly weapon or instrument . . . is violent in nature." *Grajeda*, 581 F.3d at 1192. Thus, the *Grajeda* court's reasoning applies even after *Johnson*.

if they satisfied either the inherently dangerous or the functional test." *Rodriguez v. State*, 407 P.3d 771, 773 (Nev. 2017) (emphasis omitted). Under the inherently dangerous test, a deadly weapon is any instrument that "if used in the ordinary manner contemplated by its design and construction, will, or is likely to, cause a life-threatening injury or death." *Zgombic v. State*, 798 P.2d 548, 551 (Nev. 1990) *superseded by statute as recognized in Rodriguez*, 407 P.3d at 774. Under the functional test, a deadly weapon is any instrumentality that is "used in a deadly manner." *Id.* at 550.

The Nevada Supreme Court recently addressed the definition of "deadly weapon" in section 200.481(2)(e). *Rodriguez*, 407 P.3d at 772. The *Rodriguez* Court held conclusively that "the Legislature intended 'deadly weapon' within [section] 200.481(2)(e) to be interpreted broadly, *according to both the functional definition and the inherently dangerous definition*." *Id.* at 774 (emphasis added). We take the Nevada Supreme Court at its word.

The disjunctive definition of "deadly weapon" articulated by the Nevada Supreme Court is nearly identical to the definition of "deadly weapon" in California, *see People v. Aguilar*, 945 P.2d 1204, 1207 (Cal. 1997), and we have already determined that assault with a deadly weapon under California law is a crime of violence, *Grajeda*, 581 F.3d at 1192. We similarly conclude that "even the least touching with a deadly weapon or instrument is violent in nature" when the weapon is designed to cause life-threatening injury or death, *i.e.*, when it satisfies the inherently dangerous test, because it "demonstrates at a minimum the threatened use of actual force." *See id.* Moreover, a battery committed with the use of an instrument that is used in a deadly manner, *i.e.*, a weapon that satisfies the functional test, would certainly

involve the use of violent force. *See id.* Thus, a conviction for battery with the use of a deadly weapon under section 200.481(2)(e) is a crime of violence.

Guizar-Rodriguez urges us to look beyond the common law definition of "deadly weapon" to the statutory definition of "deadly weapon" in Nevada Revised Statute 193.165. That statute provides for a sentencing enhancement when a deadly weapon is used to commit any crime. Nev. Rev. Stat. 193.165. Section 193.165(6) defines a deadly weapon as:

> (a) Any instrument which, if used in the ordinary manner contemplated by its design and construction, will or is likely to cause substantial bodily harm or death;

> (b) Any weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death; or

> (c) A dangerous or deadly weapon specifically described in [Nevada Revised Statutes] 202.255, 202.265, 202.290, 202.320 or 202.350.

Subsection (a) appears to codify the inherently dangerous test whereas subsection (b) appears to codify the functional test. However, the Nevada legislature also included a third test in subsection (c). The enumerated statutes in subsection (c) list some items that are not truly "deadly." *See* Nev. Rev. Stat. § 202.265(1)(g) (including "[a]ny device used to mark any part of a person with paint or any other substance" in a list of

items prohibited on school property). A battery committed with one of those items would not necessarily be "violent in nature." *See Grajeda*, 581 F.3d at 1191. Guizar-Rodriguez argues that the overbroad definition of "deadly weapon" in subsection (c) applies to section 200.481(2)(e); *i.e.*, that a person could be convicted of violating section 200.481(2)(e) for the un-consented marking of another person with paint. We are not convinced.

When the Nevada legislature initially adopted section 193.165, it did not define "deadly weapon." *Rodriguez*, 407 P.3d at 773 n.1. In *Zgombic*, the Nevada Supreme Court held that the definition of "deadly weapon" as it related to section 193.165 was limited to inherently dangerous instruments. *Zgombic*, 798 P.2d at 550. However, the court explicitly left intact the functional test "where a deadly weapon [is] an element of a crime, *such as assault with a deadly weapon*." *Id.* at 549–50 (emphasis added). Then, "five years after *Zgombic* was decided, [the Nevada] Legislature superseded [*Zgombic*'s] holding by amending [section] 193.165 to define 'deadly weapon' according to both the inherently dangerous and the functional definitions." *Rodriguez*, 407 P.3d at 774 (emphasis omitted). Nothing in this history suggests that the statutory definition of "deadly weapon" in section 193.165(6)(c) applies to section 200.481(2)(e).

The Nevada Supreme Court has twice stated that the definitions in section 193.165(6) are "instructive" in interpreting the meaning of "deadly weapon" in other statutes. *Rodriguez*, 407 P.3d at 774; *Funderburk v. State*, 212 P.3d 337, 337 (Nev. 2009). Nevertheless, the Nevada Supreme Court has never wavered from the historical approach of defining "deadly weapon" in section

200.481(2)(e) according to the inherently dangerous and functional tests only. Indeed it has made clear that "[section] 193.165 . . . does not apply to crimes like [section] 200.481(2)(e) that contain 'deadly weapon' as a 'necessary element' of the underlying crime." *Rodriguez*, 407 P.3d at 773. Therefore, it is not "evident" from Nevada law and precedent that the definition of "deadly weapon" in section 193.165(6)(c) applies to section 200.481(2)(e). *See Chavez-Solis v. Lynch*, 803 F.3d at 1010; *Strickland*, 860 F.3d at 1226. Quite the opposite.

We disagree that *Funderburk* supplies the precedent Guizar-Rodriguez needs to make his argument. In *Funderburk*, the defendant had been convicted of burglary while in possession of a firearm or deadly weapon. 212 P.3d at 337–40. In instructing the jury, the district court used the definition of "firearm" found in Nevada Revised Statute § 202.265(5)(b), one of the statutes listed in section 193.165(6)(c). *Id.* at 337.

In affirming the district court, the Nevada Supreme Court addressed the interplay between the common law definition of "deadly weapon" and the statutory definition in section 193.165(6). *Id.* at 338–40. The *Funderburk* court affirmed the district court, but its reasoning was nuanced. *Id.* at 37–38. The court noted that the Nevada Supreme Court had previously determined that the enhancement in section 193.165 could not be applied to burglary, because section 193.165 requires "use" of a deadly weapon. *Id.* at at 339. In response, the Nevada legislature had amended its burglary statute to prescribe an enhancement when the burglar "has in his or her *possession* or gains *possession* of any firearm or deadly weapon at any time during the commission of the crime." Nev. Rev. Stat. § 205.060 (emphasis added). Because

the functional test applied at the time of the amendment, the *Funderburk* court reasoned that the legislature "intended the term ['deadly weapon'] to have broad applicability." *Funderburk*, 212 P.3d at 340. Consequently, the court concluded that "*based on the Legislature's intent*, the definitions set forth in [section] 193.165(6) are instructive to determine what constitutes a 'deadly weapon' under [the burglary statute]." *Id.* (emphasis added).

In other words, the definitions in section 193.165(6) were instructive, because they helped illuminate the legislature's intent in other statutes where "deadly weapon" was not defined. This conclusion flows from the Nevada legislature's rebuke of the Nevada Supreme Court's decision in *Zgombic*. The *Funderburk* court was apparently unwilling to walk down that road again. So, it affirmed the district court's definition of "firearm" that was drawn from a statute specifically listed in section 193.165(6)(c). However, the *Funderburk* court never stated that the definitions in section 193.165(6) were controlling or in some way superseded the common law functional or inherently dangerous tests.

What was implicit in *Funderburk* was later made explicit in *Rodriguez*. In *Rodriguez*, the Nevada Supreme Court was asked to define "deadly weapon" in Nevada's battery with a deadly weapon statute. *Rodriguez*, 407 P.3d at 772. In the district court, the government and Rodriguez had submitted dueling jury instructions regarding the definition of "deadly weapon." *Id.* The government proposed using the functional test whereas Rodriguez proposed using the inherently dangerous test. *Id.* The district court adopted the government's instruction. *Id.*

The Nevada Supreme Court held that the jury instruction was proper and concluded that "the Legislature intended 'deadly weapon' within [section] 200.481(2)(e) to be interpreted broadly, *according to both the functional definition and the inherently dangerous definition*." *Id.* at 774 (emphasis added). The court's reasoning was two-fold. First and primarily, "when a legislature adopts language that has a particular meaning or history the legislature intended the language to have meaning consistent with previous interpretations of the language." *Id.* at 773 (alterations and quotation marks omitted). When it drafted section 200.481, the legislature was aware that Nevada courts applied the inherently dangerous and the functional tests to define "deadly weapon." *Id.* at 773. Thus, the *Rodriguez* court determined that the legislature intended to define "deadly-weapon" in section 200.481(2)(e) according to the inherently dangerous and functional tests. *Id.*

Second, the court addressed Rodriguez's argument that section 193.165(6) precluded the court from using the functional test to define "deadly weapon" in section 200.481(2)(e). Rodriguez based his argument on the limiting language in section 193.165(6) which specifies that its definition of "deadly weapon" applies only in "this section." *Id.* at 774 (quoting Nev. Rev. Stat. 193.165(6)). The court did not overturn *Funderburk* but clarified that, "although [section] 193.165(6)'s definitions do not *necessarily* extend beyond [section] 193.165, nothing *prevents* them from helping to define 'deadly weapon' within other statutes." *Id.* (emphasis in original). Importantly, the *Rodriguez* court indicated what it meant by "helping to define 'deadly weapon' within other statutes." *Id.* The court determined that "[t]he Legislature's rejection of *Zgombic indicates its continued approval of the functional definition*." *Id.* at 774

(emphasis added). Thus, the *Rodriguez* Court concluded that (1) an instrument is a deadly weapon for purposes of section 200.481(2)(e) if the instrument meets either the inherently dangerous or functional test, and (2) section 193.165(6)'s definitions of "deadly weapon" are not controlling in section 200.481(2)(e) and do not affect the validity of the traditional common law approach.

Nevertheless, Guizar-Rodriguez argues that there is a realistic probability that Nevada courts would apply the definition of "deadly weapon" in section 193.165(6)(c) to section 200.481(2)(e). We disagree, because it would contravene the Nevada Supreme Court's statement in *Rodriguez* that "when a legislature adopts language that has a particular meaning or history the legislature intended the language to have meaning consistent with previous interpretations of the language." *Rodriguez*, 407 P.3d at 773 (alterations and quotation marks omitted)). When the legislature adopted section 200.481(2)(e), the inherently dangerous and functional tests controlled. *Id.* A reading of the statute that expands the definition of "deadly weapon" beyond those tests, i.e., "[a]ny device used to mark any part of a person with paint or any other substance," Nev. Rev. Stat. § 202.265(1)(g), would not be faithful to the Nevada Supreme Court's reasoning in *Rodriguez*.[6]

In sum, Guizar-Rodriguez must demonstrate "a realistic probability, not a theoretical possibility, that [Nevada] would apply its statute to conduct that falls outside [the definition of

---

[6] Moreover, adopting a definition of "deadly weapon" that includes instruments that are not actually "deadly" would contravene the Nevada Supreme Court's instruction to "construe the statute in a manner which avoids unreasonable results." *Funderburk*, 212 P.3d at 339.

a crime of violence].” *Gonzales*, 549 U.S. at 193. The statute’s greater breadth must be “evident from its text” *Chavez-Solis*, 803 F.3d at 1010 (quotation marks omitted), or “evident” from state court precedents interpreting that text. Here, the Nevada Supreme Court has indicated that the inherently-dangerous and functional tests apply when defining “deadly weapon” in section 200.481(2)(e), because those tests constituted the common law definition of “deadly weapon” at the time the statute was drafted. Nevada does not apply an overbroad definition of “deadly weapon” to section 200.481(2)(e).

2.

Guizar-Rodriguez also contends that he could have been convicted of violating section 200.481(2)(e)(1) even if he merely possessed a deadly weapon during the battery. Nothing in the text of the statute or Nevada precedent suggests such an interpretation. In *Moore v. State*, the Nevada Supreme Court interpreted the word “uses” with respect to a section 193.165 “deadly weapon” sentencing enhancement. 27 P.3d 447, 449 (Nev. 2001). The court invoked the rule of lenity and held that “[t]he verb ‘use’ connotes ‘to put into action or service’ and ‘to carry out a purpose or action by means of.’” *Id.* Thus, in order to receive the sentencing enhancement in section 193.165, a criminal must “‘put’ a deadly weapon ‘into action’ to commit the [underlying] crime.” *Id.* Section 200.481(2)(e)(1) requires that the battery be “committed with the use of a deadly weapon.” Guizar-Rodriguez has not shown that “use” would be interpreted differently in section 200.481. Furthermore, the Nevada legislature has shown that it differentiates between “use” and “possession” of a deadly weapon. As we have already discussed, the Nevada Supreme Court determined that the

sentencing enhancement in section 193.165 could not apply to burglary, because the enhancement requires "use" of a deadly weapon. *Carr v. Sheriff, Clark Cty.*, 601 P.2d 422, 424 (Nev. 1979). Subsequently, the Nevada legislature amended its burglary statute to prescribe an enhancement when the burglar "has in his or her *possession* or gains *possession* of any firearm or deadly weapon at any time during the commission of the crime." Nev. Rev. Stat. § 205.060 (emphasis added); *Funderburk*, 212 P.3d at 339. In other words, had the legislature meant to allow a conviction under section 200.481(2)(e)(1) when a person merely possesses a deadly weapon, it would have said so. Guizar-Rodriguez has not shown a realistic probability that mere possession of a deadly weapon would satisfy the requirements of section 200.481(2)(e)(1).

## IV. CONCLUSION

Because a violation of section 200.481(2)(e)(1) requires committing a battery "with the use of a deadly weapon," it is a categorical crime of violence. As we have previously determined, "even the 'least touching' with a deadly weapon or instrument . . . is violent in nature." *Grajeda*, 581 F.3d at 1192. The Nevada Supreme Court cases cited by Guizar-Rodriguez do not undermine this conclusion.

**AFFIRMED.**