**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 18-17271 |
| v. | D.C. Nos. 2:16-cv-02018-SRB 2:95-cr-00386-SRB-2 |
| TONY BUCK, *Defendant-Appellant.* | OPINION |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted November 18, 2021
Phoenix, Arizona

Filed January 11, 2022

Before: Ronald Lee Gilman,[*] Consuelo M. Callahan, and
Daniel A. Bress, Circuit Judges.

Opinion by Judge Bress

---

[*] The Honorable Ronald Lee Gilman, United States Circuit Judge for the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### 28 U.S.C. § 2255

The panel affirmed the district court's denial of a motion pursuant to 28 U.S.C. § 2255 in which federal prisoner Tony Buck argued that his convictions for assaulting a mail carrier with intent to steal in violation of 18 U.S.C. § 2114(a) did not qualify as crimes of violence under 18 U.S.C. § 924(c)(3).

The parties agreed that § 2114(a) is divisible into basic and aggravated offenses, but disagreed whether the aggravated offense is itself further divisible. The panel concluded that the aggravated offense under § 2114(a) is further divisible into three separate offenses, and proceeded to apply the modified categorical approach. At the first step, the panel wrote that for Count 1 (which produced the operative Count 2 § 924(c) conviction), Buck was charged with and convicted of assault with intent to steal mail with the aggravating element of placing the mail carrier's life in jeopardy by the use of a dangerous weapon. At the second step, the panel determined that this divisible offense of conviction satisfies § 924(c)(3)(A)'s elements clause as a categorical matter, agreeing with the Sixth Circuit's explanation for why aggravated postal robbery through use of a dangerous weapon under § 2114(a) meets the "force" requirement: both assault and robbery require at least some force or threatened use of force, and the use of a dangerous weapon to put the victim's life in jeopardy transforms the force into violent physical force. The panel wrote that neither

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

the jury instructions nor § 2114(a) contain any suggestion that mere recklessness would suffice; instead, § 2114(a) requires intentional wrongdoing. The panel therefore held that an offender who assaults a mail carrier with intent to steal mail, while placing the mail carrier's life in jeopardy by the use of a dangerous weapon, commits a crime of violence under § 924(c)(3)(A).

## COUNSEL

Nancy Hinchcliffe (argued), Phoenix, Arizona, for Petitioner-Appellant.

Karla Hotis Delord (argued), Assistant United States Attorney; Krissa M. Lanham, Appellate Division Chief; Glenn B. McCormick, Acting United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Respondent-Appellee.

## OPINION

BRESS, Circuit Judge:

The question in this case is whether assaulting a mail carrier with intent to steal mail, while placing the mail carrier's life in jeopardy by the use of a dangerous weapon, *see* 18 U.S.C. § 2114(a), is categorically a crime of violence under 18 U.S.C. § 924(c)(3). Like other circuits, we hold that it is. We thus affirm the district court's denial of habeas relief.

I

In September 1995, Tony Buck robbed two U.S. Postal Service mail carriers in the Phoenix area in an apparent effort to find cash sent through the mail. In the first robbery, Buck approached a mail carrier who was parked in her postal vehicle, ordered her at gunpoint to put mail in a bag, and then fled. In the second robbery, committed a week later, Buck (acting with accomplices) shot a mail carrier in the head. Fortunately, the mail carrier survived.

In 1996, following a six-day jury trial, Buck was convicted on two counts of assaulting a mail carrier with intent to steal mail, in violation of 18 U.S.C. § 2114(a) (Counts 1 and 5); one count of attempted murder of a mail carrier, in violation of 18 U.S.C. § 1114 (Count 3); and three counts of using a firearm during and in relation to a "crime of violence," in violation of 18 U.S.C. § 924(c)(1) (Counts 2, 4, and 6). Buck was also charged with and convicted of aiding and abetting under 18 U.S.C. § 2.

The district court sentenced Buck to concurrent terms of 210 months' imprisonment on the assault and attempted murder convictions, a consecutive term of 60 months' imprisonment for the first § 924(c) conviction (based on the Count 1 § 2114(a) conviction for the first robbery), and a consecutive term of 240 months' imprisonment for the second § 924(c) conviction (based on the Count 3 § 1114 conviction for attempted murder). The district court did not impose a sentence for Buck's third § 924(c) conviction (Count 6, which was predicated on the Count 5 § 2114(a) conviction for the second robbery), finding that it would have been duplicative to impose two sentences for Buck's use of a firearm during the second robbery "because it was one continuous event." Buck was thus sentenced to a total term of 510 months' imprisonment. We affirmed his

convictions and sentence on direct appeal.  *United States v. Buck*, 133 F.3d 929 (9th Cir. 1997) (unpublished).

In 2016, Buck filed the operative version of his motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, arguing that his § 2114(a) convictions did not qualify as crimes of violence under 18 U.S.C. § 924(c)(3). Although Counts 2 and 6 are at issue here, and Buck did not receive a sentence on Count 6, if Buck is successful in invalidating his § 924(c) conviction on Count 2, Buck's § 924(c) sentence for Count 4 would be limited to 60 months, rather than 240 months.  That is because at the time, § 924(c)(1) imposed a 5-year consecutive term of imprisonment for the first offense, and a 20-year term for the second one.  *Id.* § 924(c)(1) (1994).  Thus, the import of Buck's argument that his conviction for assaulting a mail carrier under § 2114(a) is not a crime of violence is that he should have only one § 924(c) conviction (based on the attempted murder), and that his sentence should therefore be reduced by twenty years.

The district court denied Buck's § 2255 motion.  We granted a certificate of appealability.

## II

We review de novo "whether a criminal conviction is a crime of violence under § 924(c)(3)."  *United States v. Dominguez*, 954 F.3d 1251, 1256 (9th Cir. 2020).  We now hold that the aggravated offense of assaulting a mail carrier with intent to steal mail, while placing the mail carrier's life in jeopardy by the use of a dangerous weapon, 18 U.S.C. § 2114(a), is a "crime of violence" under the elements clause of 18 U.S.C. § 924(c)(3)(A).

A

Under 18 U.S.C. § 924(c), any person who uses or carries a firearm "during and in relation to any crime of violence" is subject to punishment. A "crime of violence" is "an offense that is a felony" and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3).

The first clause is known as the "elements clause" (or the "force clause"). The second clause is called the "residual clause." In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held that the residual clause is unconstitutionally vague. Today, to stand convicted of using a firearm during and in relation to a crime of violence, an offender must therefore satisfy the elements clause.

In determining whether a crime falls within the elements clause and thus constitutes a crime of violence, we apply the categorical approach. *See Taylor v. United States*, 495 U.S. 575, 602 (1990). Under that methodology, instead of assessing the specific facts underlying a given conviction, we consider whether the elements of the statute of conviction meet the federal definition of a "crime of violence." *Moncrieffe v. Holder*, 569 U.S. 184, 190 (2013). The question here is thus whether a conviction under § 2114(a) necessarily "has as an element the use, attempted use, or

threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). "If any— even the least culpable—of the acts criminalized do not entail that kind of force, the statute of conviction does not categorically match the federal standard, and so cannot serve as . . . [a] predicate" felony for § 924(c). *Borden v. United States*, 141 S. Ct. 1817, 1822 (2021) (plurality opinion).

We apply a modified categorical approach when the statute is "'divisible,' meaning that it 'comprises multiple, alternative versions of the crime,' at least one of which 'correspond[s] to the generic offense.'" *Alvarado v. Holder*, 759 F.3d 1121, 1126 (9th Cir. 2014) (quoting *Descamps v. United States*, 570 U.S. 254, 261–62 (2013)). A statute is divisible when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). A statute is not divisible if it merely lists "alternative means of committing the same crime." *Almanza-Arenas v. Lynch*, 815 F.3d 469, 478 (9th Cir. 2016) (en banc); *see also Mathis*, 136 S. Ct. at 2249. If a statute is indivisible and criminalizes a broader range of conduct than would fit the federal definition of a crime of violence, there is no categorical match, and that ends the inquiry. *Almanza-Arenas*, 815 F.3d at 475.

But if the statute of conviction is divisible, and if one of the alternative versions of the crime would qualify as a crime of violence under the elements clause, we then determine, using certain permitted sources, whether the offender was convicted under that part of the divisible statute. In that circumstance, the modified categorical approach "permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record—including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a

bench trial, and jury instructions and verdict forms." *Johnson v. United States*, 559 U.S. 133, 144 (2010).

B

18 U.S.C. § 2114(a) criminalizes assaulting and robbing mail carriers:

> A person who assaults any person having lawful charge, control, or custody of any mail matter or any money or other property of the United States, with intent to rob, steal, or purloin such mail matter, money, or other property of the United States, or robs or attempts to rob any such person of mail matter, or of any money, or other property of the United States, shall, for the first offense, be imprisoned not more than ten years; and if in effecting or attempting to effect such robbery he wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense, shall be imprisoned not more than twenty-five years.

In determining whether Buck's § 2114(a) conviction qualifies as a crime of violence, we first assess whether the statute is divisible.  It is.

As an initial matter, § 2114(a) is divisible into basic and aggravated offenses—a point on which the parties agree. The basic offense, punishable by "not more than ten years," is contained in the clause preceding the semicolon.  That crime consists of assaulting any person with custody or control of mail matter or other government property with

intent to steal the property, or otherwise attempting or successfully robbing the person of the property. *Id.* The aggravated offense, which follows the semicolon, carries a term of imprisonment of "not more than twenty-five years." *Id.* That crime consists of the basic offense committed in one of three aggravated ways: (1) wounding the person with custody or control of mail matter or other government property; (2) placing the person's "life in jeopardy by the use of a dangerous weapon"; or (3) committing a subsequent offense under § 2114(a). *Id.*

The basic and aggravated offenses in § 2114(a) are plainly different crimes with different punishments, making these two sets of offenses divisible from each other. *See Mathis*, 136 S. Ct. at 2249, 2256. Other circuits agree. *See Knight v. United States*, 936 F.3d 495, 498–99 (6th Cir. 2019) ("[W]e conclude that the statute sets out a separate aggravated offense."); *United States v. Enoch*, 865 F.3d 575, 579–80 (7th Cir. 2017) ("The portion of the statute before the semi-colon . . . constitutes a different crime than the part of the statute after the semi-colon."); *see also United States v. Bryant*, 949 F.3d 168, 174 (4th Cir. 2020) (noting the parties' agreement that § 2114(a) is divisible into a basic and aggravated offense).

The parties disagree, however, whether the aggravated offense is itself further divisible. We conclude that it is. The Supreme Court in *Mathis* distinguished statutes that "list[] multiple elements disjunctively" from those that "enumerate[] various factual means of committing a single element." 136 S. Ct. at 2249. *Mathis* contrasted a hypothetical statute that prohibits "the lawful entry or the unlawful entry of a premises with intent to steal" with a hypothetical statute that "requires the use of a deadly weapon as an element of a crime and further provides that

the use of a knife, gun, bat, or similar weapon would all qualify." *Id.* (quotations omitted). The former was an example of a divisible statute, where lawful and unlawful entry with intent to steal were different offenses. *Id.* The latter was an example of an indivisible statute that merely provided multiple factual means of satisfying the same element (the "use of a deadly weapon"). *Id.*

Here, the second clause of § 2114(a) presents disjunctive elements, not alternative factual means of committing a single offense. A person commits the aggravated offense under § 2114(a) and exposes himself to an extra fifteen years' imprisonment if he "wounds the person having custody of such mail, money, or other property of the United States, or puts his life in jeopardy by the use of a dangerous weapon, or for a subsequent offense." 18 U.S.C. § 2114(a). In context, the three items in the aggravated clause are substantively different elements concerning different conduct and involving different proof.

Taking the clauses in reverse order, the third aggravated offense requires an offender only to have previously committed a § 2114(a) offense. The second aggravated offense requires the "use of a dangerous weapon" in a way that puts the life of the person with custody of government property in jeopardy, but does not necessarily wound that person. The first aggravated offense, meanwhile, requires the government to prove that the victim was wounded, but does not specify that the wound must be delivered by a dangerous weapon. These are thus not factual alternatives for committing the same element. Rather, they are alternative elements, each independently sufficient to trigger the enhanced penalty under § 2114(a). *See Mathis*, 136 S. Ct. at 2249.

*Mathis* also recognized that, if the face of a statute of conviction is unclear, courts can take a "peek at the record documents" for "the sole and limited purpose of determining whether the listed items are elements of the offense." *Id.* at 2256–57 (alterations and quotations omitted); *see also Rivera v. Lynch*, 816 F.3d 1064, 1078 (9th Cir. 2016) (noting that indictments and jury instructions can be considered to determine whether a statute is divisible). *Mathis* explained that if an indictment and jury instructions "referenc[ed] one alternative term to the exclusion of all others," that is an indication that the statute contains different elements, rather than multiple means of committing the same element. 136 S. Ct. at 2257.

Here, if any further confirmation is needed, the record soundly supports treating § 2114(a) as creating three separate aggravating offenses. For the first robbery, Count 1 of Buck's indictment charged him with "put[ting] in jeopardy the life of [a mail carrier], by use of a dangerous weapon, that is, a firearm." On Count 1, the court instructed the jury that the government was required to prove that Buck "put the life of [a mail carrier] . . . in jeopardy by the use of a dangerous weapon, that is a firearm." The district court gave the same instruction for Count 5, concerning the second robbery. The government thus did not simply charge Buck with committing aggravated postal robbery by one of several means. Instead, the government charged Buck with committing a specific aggravated offense—placing a mail carrier's life in jeopardy by the use of a dangerous weapon—and the district court instructed the jury as to that specific aggravating element.

Buck points out that in Count 5 of the indictment, he was charged with "wound[ing] or otherwise put[ting] in jeopardy the life of [a mail carrier], by use of a dangerous weapon,

that is, a firearm." He argues that because Count 5 references both wounding and putting a mail carrier's life in jeopardy, this demonstrates that these are merely alternative means of committing the same element, not separate elements themselves.

Buck is mistaken. As an initial matter, there is no § 924(c) sentence associated with Count 5 because the district court did not impose one after finding that it would be duplicative. But even assuming Count 5 were relevant to the inquiry, it does not change matters. For Count 5, the government could reasonably charge Buck with committing *both* aggravating elements, considering he shot a mail carrier in the head. And regardless, the jury was ultimately instructed only as to the aggravating element that Buck put the mail carrier's life in jeopardy. The fact that the indictment in Count 5 mentions both wounding and placing a mail carrier's life in jeopardy thus does not alter the fact that the second clause of § 2114(a) sets forth alternative aggravating elements.[1]

## C

Having established that the aggravated offense under § 2114(a) is further divisible into three separate offenses, we now apply the modified categorical approach. The first step is to determine the offense for which was Buck convicted. *See Dominguez v. Barr*, 975 F.3d 725, 738 (9th Cir. 2020). As discussed, for Count 1 (which produced the operative Count 2 § 924(c) conviction), Buck was charged with and convicted of assault with intent to steal mail with the

---

[1] Because Buck was convicted of aggravated offenses under § 2114(a), we have no occasion to address whether the basic offense is further divisible, too.

aggravating element of placing the mail carrier's life in jeopardy by the use of a dangerous weapon.

The second step is to determine whether this divisible offense of conviction satisfies § 924(c)(3)(A)'s elements clause as a categorical matter. *See id.* at 739. It does. To fall within the elements clause, the predicate offense must be a felony and have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). The requirement of "physical force" means "violent physical force—'that is, force capable of causing physical pain or injury to another person.'" *United States v. Gutierrez*, 876 F.3d 1254, 1256 (9th Cir. 2017) (per curiam) (quoting *Johnson*, 559 U.S. at 140). "The phrase 'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual," which means that predicate crimes that allow a conviction for merely reckless conduct do not fall within the elements clause. *Borden*, 141 S. Ct. at 1825 (plurality opinion) (interpreting the analogous elements clause in the Armed Career Criminal Act). But predicate crimes that require purposeful or knowing acts (and that meet the other requirements of the elements clause) are sufficient. *Id.* at 1826 (plurality opinion).

For Buck's offense of conviction, the government was required to prove that Buck (1) "assault[ed]"; (2) "any person having lawful charge, control, or custody of any mail matter or of any money or other property of the United States"; (3) "with intent to rob, steal, or purloin such mail matter, money, or other property of the United States"; and (4) in the process put the life of the person having custody of the mail "in jeopardy by the use of a dangerous weapon." 18 U.S.C. § 2114(a).

Quite plainly, this offense requires the use of "violent force," meaning "force capable of causing physical pain or injury to another person." *Gutierrez*, 876 F.3d at 1256 (citation omitted). The "use of a dangerous weapon," especially when deployed to put the victim's life in jeopardy, reflects force that is capable of causing death or serious injury. As we have explained, "even the least touching with a deadly weapon or instrument is violent in nature." *United States v. Guizar-Rodriguez*, 900 F.3d 1044, 1046 (9th Cir. 2018) (quoting *United States v. Grajeda*, 581 F.3d 1186, 1192 (9th Cir. 2009)) (considering the effectively identical elements clause in 18 U.S.C. § 16(a) and concluding that assault with a deadly weapon under Nevada law was a crime of violence).

We therefore agree with the Sixth Circuit's explanation for why aggravated postal robbery through use of a dangerous weapon under § 2114(a) meets the "force" requirement: "Both assault and robbery require at least some force or threatened use of force, and the use of a dangerous weapon to put the victim's life in jeopardy transforms the force into violent physical force." *Knight*, 936 F.3d at 500; *see also Enoch*, 865 F.3d at 581 (holding, as to the aggravated offense in § 2114(a), that "force capable of wounding another or putting the life of another in jeopardy is a force that is capable of causing injury to another person and therefore qualifies as a crime of violence").

This is consistent with our longstanding interpretation of both § 2114(a) and analogous statutory language in neighboring 18 U.S.C. § 2113(d), which prohibits armed bank robbery. In the case of the latter, we have held that "put[ting] in jeopardy the life of any person by the use of a dangerous weapon or device" requires "'a holdup involving the use of a dangerous weapon actually so used during the

robbery that the life of the person being robbed is placed in an objective state of danger.'" *United States v. Coulter*, 474 F.2d 1004, 1005 (9th Cir. 1973) (quoting *Wagner v. United States*, 264 F.2d 524, 530 (9th Cir. 1959)); *see also United States v. Bain*, 925 F.3d 1172, 1177 (9th Cir. 2019) (explaining that in *Coulter*, "we imputed *Wagner*'s 'objective state of danger' standard to § 2113(d)'s 'put[ting] in jeopardy the life of any person' element").

The same interpretation applies to § 2114(a)'s life-in-jeopardy element. *See United States v. Hudson*, 564 F.2d 1377, 1380 (9th Cir. 1977) (applying *Wagner* to § 2114 and noting that "to place lives in jeopardy by the use of a dangerous weapon mean[s] more than merely subjecting the victims to force and fear," as the test "is an objective one, requiring actual danger"). Because the life-in-jeopardy element in § 2114(a) requires the use of a dangerous weapon in such a way as to place a mail carrier in an objective, actual state of danger, such an offense necessarily requires the use, attempted use, or threatened use of violent physical force. Indeed, we have already recognized that § 2113(d) is a crime of violence under the elements clause of § 924(c)(3). *United States v. Watson*, 881 F.3d 782, 786 (9th Cir. 2018) (per curiam). Thus, the decisions Buck cites addressing the meaning of the statutory term "use" in other contexts, *see Bailey v. United States*, 516 U.S. 137 (1995); *United States v. Stewart*, 779 F.2d 538 (9th Cir. 1985); *United States v. Torres-Medina*, 935 F.2d 1047 (9th Cir. 1991), are inapposite when we have interpreted §§ 2113(d) and 2114(a)'s life-in-jeopardy elements to require conduct that fits within the generic definition of a crime of violence.[2]

---

[2] *United States v. Martinez-Jimenez*, 864 F.2d 664 (9th Cir. 1989), in which we affirmed a conviction under § 2113(d) when the defendant

Buck also argues that § 2114(a) is not a crime of violence because it permits a conviction for merely reckless conduct. *See Borden*, 141 S. Ct. at 1821–22 (plurality opinion). That is incorrect. Buck's jury instructions mirrored the relevant language in § 2114(a), and neither the instructions nor § 2114(a) contain any suggestion that mere recklessness would suffice.

---

used a fake gun that appeared genuine, does not require a different result here. In *Martinez-Jimenez*, we concluded that like an unloaded gun, a toy gun could qualify as a "dangerous weapon" under § 2113(d) because "the dangerousness of a device used in a bank robbery is not simply a function of its potential to injure people directly." *Id.* at 666. The toy gun thus "evidence[d] [the offender's] apparent ability to commit an assault." *Id.* at 667.

Our conclusion in *Martinez-Jimenez* followed directly from the Supreme Court's decision in *McLaughlin v. United States*, 476 U.S. 16 (1986), which held that an unloaded gun qualified as a "dangerous weapon" under § 2113(d) because "the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue." *Id.* at 17–18 (footnote omitted). As the Seventh Circuit has explained, following *McLaughlin* "[a]ny use of a dangerous weapon that qualifies as an assault (by creating reasonable fear in victims) would therefore almost always put lives in jeopardy" under § 2113(d). *United States v. Smith*, 103 F.3d 600, 605 (7th Cir. 1996); *see also United States v. Benson*, 918 F.2d 1, 4 (1st Cir. 1990) (explaining that a defendant's use of a "mock gun" during a bank robbery "could reasonably be expected to instill fear in the teller, creating an immediate danger that a violent response would be forthcoming, which would put in jeopardy the lives of the teller and other persons at the robbery scene" (citation omitted)). Properly considered in light of *McLaughlin*, our analysis in *Martinez-Jimenez* is fully consistent with § 2113(d) requiring the offender to place the victim in an actual, "objective state of danger," *Coulter*, 474 F.2d at 1005, because others "must confront the risk that a replica or simulated gun creates before knowing that it presents no actual threat." *Martinez-Jimenez*, 864 F.2d at 668.

Instead, § 2114(a) requires intentional wrongdoing. Buck's aggravated assault offense of conviction punishes a person who "*with intent* to rob, steal, or purloin . . . mail matter . . . puts [the victim's] life in jeopardy by the use of a dangerous weapon." (emphasis added). The intent requirement in the aggravated offense extends not only to the robbery but also to the use of the dangerous weapon. *See Torres v. Lynch*, 578 U.S. 452, 467 (2016) ("In general, courts interpret criminal statutes to require that a defendant possess a *mens rea*, or guilty mind, as to every element of an offense."); *United States v. Sua*, 307 F.3d 1150, 1154 (9th Cir. 2002) ("Traditionally, the mens rea of a crime extends to each element of that crime.").

Interpreting § 2114(a) to require the intentional use of a dangerous weapon is also consistent with how we have interpreted the identical language in § 2113(d). It is well-settled that § 2113(d) requires "that 'the robber *knowingly* made one or more victims at the scene of the robbery aware that he had a gun, real or not.'" *United States v. Henry*, 984 F.3d 1343, 1358 (9th Cir. 2021) (quoting *United States v. McDuffy*, 890 F.3d 796, 799 (9th Cir. 2018)); *see also United States v. Odom*, 329 F.3d 1032, 1035 (9th Cir. 2003) (same). Similarly, to be convicted of aiding and abetting an aggravated robbery under § 2113(d), we have held that "the government must first show that the defendant knowingly and intentionally aided and abetted the underlying offense of unarmed bank robbery and then show that the defendant knowingly and intentionally aided the commission of the aggravating element: assaulting a person or putting a life in jeopardy before or during the commission of that aggravating element." *United States v. Dinkane*, 17 F.3d 1192, 1197 (9th Cir. 1994).

Under our precedents, our interpretation of § 2113(d) applies equally to § 2114(a). *See, e.g.*, *Hudson*, 564 F.2d at 1380 n.2 ("Cases decided under either of these statutes have long been authority for decisions arising under the other."); *United States v. Crawford*, 576 F.2d 794, 800 (9th Cir. 1978) (per curiam) (explaining that while certain cases "dealt primarily with provisions of 18 U.S.C. § 2113 . . . the same rule and rationale should apply to convictions under § 2114"). Thus, to stand convicted of the aggravated life-in-jeopardy offense under § 2114(a), merely reckless conduct is insufficient.

We therefore join every circuit to have addressed the question—the Fourth, Fifth, Sixth, Seventh, and Eleventh—in holding that an offender who assaults a mail carrier with intent to steal mail, while placing the mail carrier's life in jeopardy by the use of a dangerous weapon, commits a crime of violence under § 924(c)(3)(A). *See, e.g.*, *Bryant*, 949 F.3d at 182 ("[T]he aggravated offense contained in § 2114(a) . . . is categorically a crime of violence."); *United States v. Castro*, 4 F.4th 345, 352 (5th Cir. 2021) (holding that an offender who was "convicted of and sentenced for putting the lives of his victims in jeopardy by using a handgun" had "easily satisfie[d] the elements clause"); *Knight*, 936 F.3d at 501 ("[T]he aggravated offense of 18 U.S.C. § 2114(a) is a crime of violence."); *Enoch*, 865 F.3d at 581 ("[I]t is beyond question that a robbery that puts a person's life in jeopardy by the use of a dangerous weapon is a violent crime." (internal citation omitted)); *In re Watt*, 829 F.3d 1287, 1290 (11th Cir. 2016) ("[T]he jury had to have found that [petitioner] assaulted the victim and that her life was put

in jeopardy, which satisfies the elements clause." (quotations and alterations omitted)).[3]

**AFFIRMED.**

---

[3] We have no occasion to consider here whether the other divisible aggravated offenses in § 2114(a)—wounding a mail carrier or committing a subsequent § 2114(a) offense—would also categorically qualify as crimes of violence. We also reject Buck's request to expand his certificate of appealability to address whether the federal aiding and abetting statute, 18 U.S.C. § 2, is a crime of violence because Buck has not made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Buck did not raise his argument about aiding and abetting below, and so forfeited it. *See Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018). Regardless, we have repeatedly rejected attacks on § 924(c) convictions predicated on aiding-and-abetting convictions because defendants found guilty of aiding and abetting are liable as principals under § 2. *See Henry*, 984 F.3d at 1355–56 (9th Cir. 2021) (citing cases).