**UNITED STATES of America, Plaintiff–Appellee,**

v.

**John Leonard ROUSSEAU, Jr. Defendant–Appellant.**

No. 00–30214.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 7, 2001

Filed July 3, 2001

Mark Bennett Weintraub, Assistant Federal Public Defender, Eugene, Oregon, for the defendant-appellant.

Sean B. Hoar, Assistant United States Attorney, Eugene, Oregon, for the plaintiff-appellee.

Before: GOODWIN, GREENBERG,* and RAWLINSON, Circuit Judges.

Opinion by Judge GREENBERG; Concurrence by Judge RAWLINSON

GREENBERG, Circuit Judge:

## I. INTRODUCTION AND BACKGROUND

John Leonard Rousseau, Jr. appeals from his conviction on two counts of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Rousseau raises three issues on appeal: (1) he was arrested unconstitutionally because the police did not have probable cause for the arrests; (2) the district court erred in denying his motion to sever the two felon in possession counts; and (3) he was wrongfully convicted under section 922(g)(1) because the statute is unconstitutional both on its face and as applied in this case, or, alternatively, that the district court erred by failing to instruct the jury as to the effect on and recency of transportation in interstate commerce of the firearms. Because each of Rousseau's arguments is without merit, we affirm his conviction.

The indictments involved charges relating to two different dates. The first was January 26, 1999, when the Lane County Sheriff's Office ("LCSO") received a telephone call from Pamela Long in Eugene, Oregon, reporting that a man with a gun, later identified as Rousseau, had entered her apartment. Shortly thereafter, in responding to a dispatch with respect to the matter, LCSO Sergeant Byron Trapp observed a red sedan parked at a convenience store parking lot which he recognized as the vehicle the armed suspect reportedly occupied. Trapp also recog-

---

* The Honorable Morton I. Greenberg, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

nized an individual, who in fact was Rousseau, seated in the driver's seat of the red sedan as matching the description of the person reportedly in possession of the firearm. Trapp detained Rousseau and another individual, David Hutchinson, who also had been at Long's apartment and who was standing in the vicinity of the vehicle when Trapp arrived, at gunpoint until other officers arrived at the scene.

After Rousseau and Hutchinson were handcuffed, another LCSO officer searched the red sedan for the reported firearm and located a loaded .9 mm semiautomatic pistol, with a round of ammunition in the chamber under the front passenger seat.[1] The officer found this firearm within approximately five minutes of the initial contact between Trapp and the suspects, and approximately eleven minutes after Long's 911 call. An officer read Rousseau his *Miranda* rights, which Rousseau acknowledged he understood, following which he gave a statement. In his statement Rousseau denied knowing that there was a gun in the red sedan and stated that he had no idea who owned the weapon or what was its source. The officers then transported Rousseau to the Lane County Jail were he was booked for unlawful possession of a firearm and being a felon in possession of a firearm. The police learned from subsequent investigation that Rousseau purchased the firearm from Cleo Alan Wigget during a drug transaction. Wigget informed Rousseau that the firearm recently had been stolen. Moreover, there was testimony that the firearm had been manufactured in Spain and imported through New Jersey before it was taken to Oregon.

The second offense was for events on August 13, 1999, when Springfield Police Department ("SPD") officer Ryan Porath, who was on patrol at 3:31 a.m., observed Rousseau standing at a telephone booth near a 1973 Ford pickup truck in the parking lot outside a Safeway store. Upon making this observation, Porath requested information from the dispatcher about the vehicle and about Rousseau. The dispatcher informed him, among other things, that Rousseau was 32–years old and had a caution indicator stating that he carried a six-inch hunting knife. The dispatcher also told Porath that Rousseau's driver's license had been suspended because he had been driving without insurance. Notwithstanding his receipt of this information, Porath continued his patrol as he was not aware that Rousseau was committing any crime.

Porath returned to the same location at 6:45 a.m. and at that time observed Rousseau sleeping in the driver's seat of the pickup truck. As Porath walked up to its passenger side he observed a double-edged knife on the floorboard between the driver's and passenger's seats. Porath also noticed a sharpened metal hook with a long handle on the dashboard near the passenger side. After he made these observations, Porath woke up Rousseau who identified himself with an Oregon photographic identification card. Porath then confirmed with the dispatcher that Rousseau was a convicted felon and that he had caution indicators for carrying large hunting knives. Once Rousseau was out of the truck, Porath reached in through the driver's side of the truck and seized the knife. At that time he observed a brown box containing two nylon sheaths with silver metal handles protruding. The handles appeared to be from throwing knives, so Porath went to the passenger side of the vehicle and took control of them. Thereaf-

---

1. Julie Wallace, who was in Rousseau's vehicle, also was at the scene but we are not certain whether she was held at gunpoint. It does appear, however, that she was handcuffed.

ter, Porath arrested Rousseau on the charge of being a felon in possession of a restricted weapon.

After Porath arrested Rousseau, he advised him of his *Miranda* rights, which Rousseau acknowledged that he understood. Then SPD Officer Russ Boring arrived and assisted Porath in searching the truck. Boring located a loaded .357 magnum revolver in an open and otherwise empty black purse near the driver's seat. Subsequent investigation revealed the gun had been left in a car that Rousseau and his girlfriend used a few weeks earlier. The gun had been stolen from David Rossow on or about June 19, 1999. Finally, there was testimony at trial that the gun had been manufactured in New Hampshire before being transported interstate to Oregon.

On September 23, 1999, a grand jury returned an indictment against Rousseau charging him with two counts of possession of a firearm by a convicted felon in violation of section 922(g)(1). Thereafter, Rousseau moved to suppress the weapons as evidence and moved to sever the two counts for trial. On February 22, 2000, the district court, after holding a hearing, denied the motions. At the ensuing trial, the jury convicted Rousseau on both counts. On May 31, 2000, the court sentenced Rousseau to a custodial term of imprisonment of 120 months on count 1 and to a consecutive custodial term of 40 months on count 2, to be followed by a three-year period of supervised release. Rousseau then filed a timely appeal.

## II. DISCUSSION

■ Rousseau argues that the district court erred in denying his motions to suppress the weapons.[2] First, he contends

that his seizure on January 26, 1999, was too intrusive to be deemed an investigatory stop and thus constituted an arrest. He builds on this premise by contending that the police did not have probable cause for the arrest which thus was illegal. He then completes this point by arguing that inasmuch as his arrest was illegal so was the subsequent search leading to the discovery and seizure of the pistol and the ammunition.

■ To determine whether a stop has turned into an arrest, a court must consider the "totality of the circumstances." *United States v. Del Vizo,* 918 F.2d 821, 824 (9th Cir.1990). In doing so, a court considers both the intrusiveness of the stop (the aggressiveness of the methods used by police and the degree to which the suspect's liberty was restricted) and the justification for using such tactics (whether the officer had sufficient basis to fear for his or her safety warranting a more intrusive action). *See Washington v. Lambert,* 98 F.3d 1181, 1185 (9th Cir.1996); *United States v. Robertson,* 833 F.2d 777, 780 (9th Cir.1987). "In short, [the court] decide[s] whether the police action constitutes a *Terry* stop or an arrest by evaluating not only how intrusive the stop was, but also whether the methods used were reasonable *given the specific circumstances.*" *Washington,* 98 F.3d at 1185 (emphasis in original); *see Del Vizo,* 918 F.2d at 824–25.

The Supreme Court and this court have permitted limited intrusions on a suspect's liberty during a *Terry* stop to protect the officer's safety and have held that the use of force does not convert the stop into an arrest if it is justified by a concern for the officer's personal safety. *See United States v. Hensley,* 469 U.S. 221, 235–36,

---

2. We are exercising plenary review in the issues relating to the motions to suppress. *See United States v. Chan–Jimenez,* 125 F.3d 1324, 1326 (9th Cir.1997); *United States v.* *Hudson,* 100 F.3d 1409, 1414 (9th Cir.1996); *United States v. Michael R.,* 90 F.3d 340, 345–46 (9th Cir.1996).

105 S.Ct. 675, 683–84, 83 L.Ed.2d 604 (1985); *Terry v. Ohio,* 392 U.S. 1, 24, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968); *United States v. Buffington,* 815 F.2d 1292, 1300 (9th Cir.1987) (upholding stop as a *Terry* stop rather than an arrest where police officers forced suspects to exit car and lie down on pavement at gunpoint); *see Alexander v. County of Los Angeles,* 64 F.3d 1315, 1321 (9th Cir.1995) (upholding investigatory stop where, following vehicle stop, officers surrounded car with weapons drawn); *United States v. Alvarez,* 899 F.2d 833, 838 (9th Cir.1990) (finding totality of circumstances justified a stop under *Terry* where police ordered suspect in car to keep hands in view, approached vehicle with their weapons drawn and ordered suspect out of car).

In this case, the totality of the circumstances indicates that the officers initially conducted an investigatory stop on January 26, 1999, during which they discovered inculpatory evidence. Trapp, upon entering the parking lot, observed the red sedan reportedly occupied by the armed intruder and recognized that the individual in the driver's seat matched the description of the person reportedly in possession of a firearm. Further, Trapp had reason to believe that the occupant of the red sedan only minutes earlier had made an armed intrusion that constituted a burglary, attempted burglary, or attempted kidnaping. Moreover, Trapp was alone when he located Rousseau. Overall, Trapp was in a situation similar to that of the officers in *Alexander* with respect to the suspects there as he had information that Rousseau was armed and therefore likely was dangerous. *See Alexander,* 64 F.3d at 1319–20 (finding investigatory stop where officers drew weapons on suspect they believed had fired on witness to recent robbery). *See also United States v. Jacobs,* 715 F.2d 1343, 1346 (9th Cir.1983) (upholding investigatory stop where dispatch warned that suspect was possibly armed and officer was alone at time). Of course, once the officers found the firearm they had probable cause to arrest Rousseau.[3]

Rousseau also challenges the district court's denial of his motion to suppress the firearm seized on August 13, 1999. He argues that there was not probable cause for his arrest because, although the double-edged knife was on the floorboards of the truck, at most he was in constructive possession of it and thus he had not committed an offense as Oregon law only prohibits the *carrying* of such weapons by convicted felons. Accordingly, because in his view his conduct was not criminal, the police did not have probable cause either to arrest him or search his vehicle.

■ In considering this matter we initially observe that evidence in "plain view" may be seized without a warrant, so long as the initial intrusion leading to the view is lawful and the incriminatory nature of the evidence is immediately apparent to the officers. *See Horton v. California,* 496 U.S. 128, 136–37, 110 S.Ct. 2301, 2308, 110 L.Ed.2d 112 (1990). Here, of course, the knife was in the officer's plain view from outside of the truck and its incriminating nature was immediately apparent.

■ Rousseau claims, however, that the police did not have probable cause to arrest him because he was not physically carrying the knife. Or.Rev.Stat. § 166.270(2) (1999) (emphasis added), implicated here, provides:

> Any person who has been convicted of a felony under the law of this state or any other state, or who has been convicted of

---

**3.** *United States v. Delgadillo–Velasquez,* 856 F.2d 1292 (9th Cir.1988), is not inconsistent with our result because in that case there was no evidence that the suspect presented a threat to the safety of the officers. *See id.* at 1295–96.

a felony under the laws of the Government of the United States, who owns or has in the person's possession or under the person's custody or control any instrument or weapon having a blade that projects or swings into position by force of a spring or by centrifugal force or any blackjack, slungshot, sandclub, sandbag, sap glove or metal knuckles, *or who carries a dirk, dagger or stiletto, commits the crime of felon in possession of a restricted weapon.*

In *State v. Morrison,* 25 Or.App. 609, 549 P.2d 1295 (1976), the Oregon Court of Appeals construed a similar statute, Or. Rev.Stat. § 166.510 (repealed), and held the defendant's constructive possession of a stiletto established that an offense had been committed. There, an officer who had stopped a driver for a traffic offense seized a stiletto that he observed on the floorboard by the side of the driver's right foot. *See id.* at 1296. In considering whether the presence of the stiletto constituted an offense, the court first looked to the dictionary definition of the word "carry," finding it meant "to convey or transport, especially in a vehicle." *Id.* Next, the court compared section 166.510 to Or.Rev. Stat. § 166.240 (1999) making it a crime to carry a stiletto "concealed about his person." *See id.* The court found, reading the sections 166.510 and 166.240 together, that the legislature intended to "prohibit ... such carrying as by its nature makes the instrument readily available for use as a weapon by a person who has its constructive possession." *Id.* The court thus determined that in the circumstances the defendant had violated section 166.510. *See id.*

We conclude after consideration of section 166.270(2) and applying the reasoning of the *Morrison* court, that Porath had probable cause to arrest Rousseau when he observed the knife on the floorboard of the truck. Rousseau was a known convicted felon, who, according to the reasoning of *Morrison,* was "carrying" a prohibited knife within the meaning of section 166.270(2). Thus, inasmuch as Rousseau's conduct was illegal under Oregon law, the police properly arrested him so that the subsequent search which led to the seizure of the revolver was valid as incident to his arrest.[4]

▮ Rousseau argues that the district court erred when it denied his motion to sever the two counts in the indictment that he predicated on an argument that the crimes involved different evidence and did not involve a common scheme or plan.[5] Fed.R.Crim.P. 8(a), which governs the joinder of offenses, provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

In determining whether joinder is proper, the district court should examine only those allegations in the indictment. *See United States v. VonWillie,* 59 F.3d 922, 929 (9th Cir.1995); *United States v. Terry,* 911 F.2d 272, 276 (9th Cir.1990).

---

**4.** It is significant that Rousseau does not contend that the double-edged knife was not a restricted weapon within the meaning of section 166.270(2). Indeed, he expressly characterizes the weapon as a "dirk dagger, or stiletto." *See* reply br. at 5.

**5.** We review this decision for an abuse of discretion. *See United States v. Gillam,* 167 F.3d 1273, 1276 (9th Cir.1999).

In this case, both incidents involved fire-arms charges. The indictment charges Rousseau with one count of being a felon in possession of a firearm on January 26, 1999, and a second count of being a felon in possession of a firearm on August 13, 1999. Clearly, these two offenses were of a same or similar character and therefore were joined properly.

■ In any event, even if we found that the offenses had been joined improperly, we would be justified reversing only if the misjoinder "result[ed] in actual prejudice because it had [a] substantial and injurious effect or influence in determining the jury's verdict." *Terry*, 911 F.2d at 277 (internal quotation marks omitted) (quoting *United States v. Lane*, 474 U.S. 438, 449, 106 S.Ct. 725, 732, 88 L.Ed.2d 814 (1986)). Rousseau attempts to meet this exacting standard by contending that the joinder prejudiced his defense on count 2 relating to the August 13, 1999 incident in two ways. First, he claims that evidence supporting count 1 improperly invited the jury to weigh his character in deciding count 2. Second, he contends that the evidence against him on the first count was significantly stronger than that on the second, thereby prejudicing his defense on the latter count. But in its charge, the district court specifically instructed the jury that it was obliged to consider the counts separately. Consequently, inasmuch as juries are presumed to follow their instructions, *see Zafiro v. United States*, 506 U.S. 534, 540, 113 S.Ct. 933, 939, 122 L.Ed.2d 317 (1993), when a court charges the jury on the elements of each count separately, its action militates against a finding of prejudice. *See United States v. Matta–Ballesteros*, 71 F.3d 754, 771 (9th Cir.1995). After a careful review, we have concluded that the joinder did not

prejudice Rousseau as we see no reason to believe that the jury would not have considered the two counts discretely as the court instructed. We also point out, though our conclusion does not depend on this observation, that the offenses here did not involve highly charged inflammatory situations in which arguably a joinder of offenses might be prejudicial.

■ Rousseau also contends that his conviction for firearm possession by a felon is invalid because Congress lacks the authority under the Commerce Clause to make such activity criminal.[6] He concedes that we have held that 18 U.S.C. § 922(g)(8), interdicting possession of firearms by persons against whom certain domestic violence restraining orders are pending, is constitutional under the Commerce Clause, notwithstanding the Supreme Court's decisions in *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), and *Jones v. United States*, 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), confining Congress's powers under the Clause. *See United States v. Jones*, 231 F.3d 508, 514–15 (9th Cir.2000). Moreover, since Rousseau has filed his brief, we have relied on our opinion in *Jones* and have held that Congress lawfully exercised its authority under section 922(g)(1), the precise statute in issue. *See United States v. Davis*, 242 F.3d 1162, 1163 (9th Cir.2001). In the circumstances we hold that section 922(g)(1) is constitutional on its face and as applied.

■ Rousseau raises the alternative argument that section 922(g)(1) is unconstitutional as applied because the government did not prove his possession of a firearm had an "individualized substantial effect on commerce." Br. at 46. In *United States v. Hanna*, 55 F.3d 1456, 1462

---

**6.** We are exercising plenary review on the Commerce Clause issues as Rousseau's contentions with respect to them raise questions

of law. *See United States v. Olafson*, 213 F.3d 435, 439 (9th Cir.2000).

(9th Cir.1995), however, we held that a past connection to interstate commerce is sufficient. Adopting the test set forth by the Supreme Court in *Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), with respect to a predecessor statute to section 922(g)(1), we have held there need be only a " 'minimal nexus that the firearm have been, at some time, in interstate commerce.' " *Hanna*, 55 F.3d at 1462 (quoting *Scarborough*, 431 U.S. at 575, 97 S.Ct. at 1969). In this case there was evidence that the firearm seized on January 26, 1999, in Oregon had been manufactured in Spain and imported through New Jersey, and the firearm seized on August 13, 1999, in Oregon had been manufactured in New Hampshire. Therefore, section 922(g)(1) is not unconstitutional as applied to Rousseau. For the same reason, Rousseau's additional arguments that the government failed to prove he violated section 922(g)(1) and that the district court should have instructed the jury regarding the effect on and recency of transportation in interstate commerce are also without merit.

Finally, Rousseau claims that the district court erred by instructing the jury that it must find the firearm "was shipped and transported in interstate commerce." He contends that instead the court should have instructed the jury that the possession of the firearm must have been "in or affecting commerce" as section 922(g)(1) provides. We, however, do not see why the charge had to be given in the precise statutory language as the charge as given clearly described the elements of the offense.

### III. CONCLUSION

Rousseau's convictions for two counts of possession of a firearm by a felon are affirmed. The district court correctly denied his motions to suppress the firearms. In the first case, the police conducted a valid investigatory stop which resulted in the proper seizure of the firearm and Rousseau's subsequent arrest. In the second case, the police properly seized the firearm incident to his lawful arrest. Additionally, the district court did not abuse its discretion in denying Rousseau's motion to sever the two counts as they charged offenses of the same or similar character. Finally, we conclude that section 922(g)(1) is constitutional both on its face and as applied in this case and that the court's charge to the jury was proper.

AFFIRMED.

RAWLINSON, Circuit Judge, Concurring:

I concur in the result.