**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Tyrone BLOCKER, Defendant–**
**Appellant.**

**No. 01–30044.**
**D.C. No. CR–99–00561–BR.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 2002.

Decided April 22, 2002.

Before B. FLETCHER, O'SCANNLAIN, and BERZON, Circuit Judges.

## MEMORANDUM *

Tyrone Blocker was convicted by a jury on the charge of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). He appeals the district court's denial of his motion to suppress, alleges a *Brady* violation, and makes facial and as-applied constitutional challenges to § 922(g)(1) or, alternatively, claims that the evidence was insufficient to satisfy the interstate commerce element of § 922(g)(1). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291, and we affirm.

### I.

#### Motion to Suppress

The lawfulness of a search and seizure is a mixed question of law and fact that we review *de novo. United States v. Mendoza–Ortiz,* 262 F.3d 882, 885 (9th Cir.2001) (per curiam) (citing *United States v. Cervantes,* 219 F.3d 882, 887 (9th Cir.2000)).

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

We accept the district court's underlying findings of fact in the absence of clear error. *Id.*

■ The district court denied Blocker's motion to suppress the rifle found at his residence on the grounds that the rifle was found in plain view while the officers were engaged in activities authorized by the emergency doctrine and the protective sweep exception to the warrant requirement. We agree that the emergency doctrine justified the search and, therefore, do not reach the question of whether the protective sweep exception applied.

■ To establish the legality of a warrantless search under the emergency doctrine, the government must show by a preponderance of the evidence that (1) the police had reasonable grounds to believe that there was an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search was not primarily motivated by intent to arrest and seize evidence; and (3) there was some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched. *Cervantes,* 219 F.3d at 888 (citing *People v. Mitchell,* 39 N.Y.2d 173, 383 N.Y.S.2d 246, 347 N.E.2d 607, 609 (1976)). On the record before it at the time, the district court concluded that the government had shown each of these elements by a preponderance of the evidence. We agree.

First, the officers had reasonable grounds to believe that there was an emergency at hand and an immediate need for their assistance for the protection of human life. They had been dispatched to Blocker's residence in response to two 911 calls. When Blocker answered the door, he claimed that no one else was in the house. Because Blocker was less than forthcoming about who was in the house and why 911 calls had been placed, the officers informed Blocker that they would enter the house to make sure no one was in need of assistance. The officers found a bedroom door padlocked from the outside with human hair in the door frame. A visible phone line ran into the room. A female had made the 911 calls, and Blocker admitted that a female was in the bedroom. The officers reasonably were concerned that someone in the bedroom was hurt or in need of assistance. Upon demand, Blocker yielded the padlock key, and the officers gained access to the bedroom. Up to this point, Blocker agrees that the officers acted within the scope of the Fourth Amendment based on the emergency doctrine.

However, Blocker contends that the emergency doctrine did not justify the subsequent search of the bedroom. According to the district court's factual findings, which are well supported by the testimony at the suppression hearing, Ms. Griffin emerged from the bedroom, which was so dark the officers could not see her hands. When she approached them, the officers handcuffed her. Almost immediately after Ms. Griffin was handcuffed, Officer Hardy switched on the light to the bedroom and spotted the rifle on the bedroom floor in plain view.

As the district court observed:

At the time the light was switched on, all circumstances giving rise to the 9–1–1 call had not been disclosed or confirmed. Notwithstanding that the precision of hindsight permits the contention the officers had no affirmative reason to believe anyone else was in the bedroom at the time Officer Hardy switched on the light, ... this was a reasonable, minimal intrusion to confirm the safety of Ms. Griffin and the officers.

Dist. Ct. Opinion and Order at 8. Because of the darkness in the room, the officers

could not rule out the possibility that someone else was inside. Under these circumstances, turning on the light and entering the bedroom was the next natural step in confirming that no one else was in need of assistance. The district court did not clearly err in finding that the emergency to which the officers were responding had not concluded until the officers could observe the dark bedroom from which Ms. Griffin had emerged.

With respect to the second requirement of the emergency doctrine, the district court did not clearly err in finding that the search was not primarily motivated by an intent to arrest and seize evidence. Although Officer Foster admitted that the officers searched the rest of the house after finding the rifle, this fact does not necessarily mean that Officer Hardy had an improper motive when he turned on the light to the bedroom. Indeed, Officer Hardy testified that safety concerns prompted the officers to enter the bedroom. Based on the totality of the evidence presented at the suppression hearing, the district court reasonably found that when the officer turned on the light to the bedroom and looked inside, he did not do so to search for evidence.

Finally, there was a reasonable basis, approximating probable cause, to associate the emergency with the bedroom where the rifle was found. Ms. Griffin had just emerged from the dark room, which had been padlocked from the outside. A phone line ran under the door into the bedroom, indicating that the 911 calls were made from within.

The government satisfied its burden of demonstrating that the emergency doctrine justified the search in this case. Because the officers were entitled to turn on the light and look into the bedroom, they were entitled to seize the rifle that was in plain view.

## II.

### *Brady* Claim

Blocker contends that the government's failure to produce the reports of the Bureau of Alcohol, Tobacco and Firearms ("ATF Reports") was a *Brady* violation because the reports contained exculpatory information that would have been useful to the defense in support of its Motion to Suppress. The district court rejected this argument. We review allegations of a *Brady* violation *de novo*. *United States v. Antonakeas*, 255 F.3d 714, 725 (9th Cir. 2001).

██ To prevail on a *Brady* claim, the defendant must show that (1) the evidence was exculpatory or impeaching; (2) it should have been, but was not produced at a time when it would have been of value to the accused; and (3) the suppressed evidence was material to his guilt or punishment. *See id.* (citing *Paradis v. Arave*, 130 F.3d 385, 392 (9th Cir.1997)); *United States v. Gamez–Orduno*, 235 F.3d 453, 461 (9th Cir.2000) (delayed disclosure not prejudicial if it occurs at a time when disclosure would be of value to the accused (citing *United States v. Span*, 970 F.2d 573, 583 (9th Cir.1992))). First off, it is doubtful that the evidence was exculpatory, and in any event the government produced the evidence in time for it to be of value to the defense. Under Federal Rule of Criminal Procedure 12, motions to suppress evidence must be made and should be determined prior to trial. Fed. R.Crim.P. 12(b)(3), (e). In this case, the government disclosed the ATF Reports prior to trial in time for the defense to move to reopen the hearing on the motion to suppress based on the government's discovery violation. *See* Fed.R.Crim.P. 16(d)(2) ("If at any time during the course of the proceedings it is brought to the

attention of the court that a party has failed to comply with this rule, the court may ... enter such other order as it deems just under the circumstances."). However, Blocker failed to request this relief. Instead, Blocker sought only to exclude the ATF Reports at trial.

Because the alleged exculpatory evidence in the ATF Reports was disclosed in time to be of value to the defense, the government did not violate *Brady*.

## III.

### Commerce Clause

The district court concluded, in denying Blocker's Motion to Dismiss Indictment, proposed jury instruction, and Motion for Judgment of Acquittal, that the interstate commerce element of § 922(g)(1) required the government to prove only that the SKS assault rifle possessed by Blocker previously had been transported in interstate commerce. Blocker suggests that § 922(g)(1), as interpreted by the district court, is unconstitutional on its face because it requires an inadequate nexus with interstate commerce to invoke congressional power under the Commerce Clause. He argues, alternatively, that the statute is unconstitutional as applied to him because his possession was inadequately connected to interstate commerce. Finally, he argues that, even if the statute is constitutional as interpreted by the district court and as applied to Blocker, the evidence was insufficient to satisfy the interstate commerce element that the rifle had been transported in interstate commerce at some time.

We review these issues *de novo*. *United States v. Jones*, 231 F.3d 508, 513 (9th Cir.2000) (reviewing constitutionality of a statute *de novo* ); *United States v. Hairston*, 64 F.3d 491, 493–94 (9th Cir.1995) (reviewing refusal to give jury instruction

based on a legal determination *de novo* ); *United States v. Duran*, 189 F.3d 1071, 1078 (9th Cir.1999) (reviewing denial of motion for acquittal based on insufficiency of the evidence *de novo* ). We conclude that prevailing Ninth Circuit law requires that all of these arguments be rejected.

We recently addressed the issues presented by Blocker's facial and as-applied challenges to § 922(g)(1) in *United States v. Davis*, 242 F.3d 1162 (9th Cir.) (per curiam), *cert. denied,* —— U.S. ——, 122 S.Ct. 178, 151 L.Ed.2d 123 (2001), and *United States v. Rousseau*, 257 F.3d 925, 932–933 (9th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 503, 151 L.Ed.2d 413 (2001). These cases reaffirm that § 922(g)(1) is facially constitutional, *see Davis*, 242 F.3d at 1163, and that the government must prove only that the firearm possessed by the defendant was transported in interstate commerce at some time in the past, *see Rousseau*, 257 F.3d at 933. This minimal nexus to interstate commerce is sufficient to satisfy the Commerce Clause, even in light of the most recent Supreme Court opinions regarding Congress's Commerce Clause powers. *Id.*

Proof that the firearm was manufactured out of state is all that is needed to survive an as-applied challenge to the statute. *Id.* In this case, a government witness, Special Agent Tuerler, testified that Blocker's rifle was manufactured outside of Oregon. Thus, the constitutionally required nexus was present on the facts of this case, and Blocker's as-applied challenge fails.

We also reject Blocker's contention that there was insufficient evidence to establish the interstate commerce element of § 922(g)(1). At trial, Special Agent Tuerler testified that Blocker's rifle was manufactured in China. Under *United States v. Clawson*, 831 F.2d 909, 913 (9th Cir.1987), evidence of a firearm's foreign manufac-

ture is sufficient to support a finding that the gun moved in *interstate* commerce. *See also United States v. Alvarez,* 972 F.2d 1000, 1003 (9th Cir.1992) (expert testimony that firearm found in defendant's possession in California was manufactured in Spain sufficient to prove firearm was possessed in or affecting *interstate* commerce for purposes of § 922(g) (citing *Clawson,* 831 F.2d at 913)). The district court, thus, did not err in denying Blocker's Motion to Dismiss Indictment, proposed jury instruction, and Motion for Judgment of Acquittal.

### IV.

#### Ineffective Assistance of Counsel

■■■■ In his reply brief, Blocker alleges for the first time that his trial counsel was ineffective in not moving to reopen or reconsider the motion to suppress after the government disclosed the ATF Reports. Ordinarily this court will not hear issues raised for the first time on appeal. *See Antonakeas,* 255 F.3d at 721. Also, issues not raised in a party's opening brief are waived. *Alaska Ctr. for the Env't v. U.S. Forest Serv.,* 189 F.3d 851, 858 n. 4 (9th Cir.1999). Since Blocker's claim of ineffective assistance was neither raised below nor raised in his opening brief, we decline to address it on direct appeal. Rather, a claim of ineffective assistance of counsel should be raised in habeas corpus proceedings pursuant to 28 U.S.C. § 2255.

AFFIRMED.