**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff - Appellee*,

v.

JOHN RUSSELL HOWALD,

*Defendant - Appellant*.

No. 23-1182

D.C. No.
6:21-cr-00004-
BMM-1

OPINION

Appeal from the United States District Court
for the District of Montana
Brian M. Morris, District Judge, Presiding

Argued and Submitted May 6, 2024
Seattle, Washington

Filed June 13, 2024

Before: William A. Fletcher, Carlos T. Bea, and John B.
Owens, Circuit Judges.

Opinion by Judge Owens

# SUMMARY[*]

## Criminal Law

The panel affirmed John Howald's convictions for a federal hate crime under 18 U.S.C. § 249(a)(2) and discharge of a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A).

Howald argued that § 249(a)(2) is an unconstitutional exercise of Congress's Commerce Clause power both facially and as applied to him. The panel held that the jurisdictional element in § 249(a)(2)(B)(iii)—that a defendant have used a firearm "that has traveled in interstate or foreign commerce"—defeats the facial challenge. The panel rejected the as-applied challenge because the government proved that the firearms and ammunition used in the offense traveled across state lines.

Howald argued that his § 249(a)(2) hate crime conviction is not a predicate crime of violence for § 924(c)(1)(A). The panel held that § 249(a)(2) is divisible, and that Howald's offense is categorically a crime of violence because an attempt to kill in violation of § 249(a)(2)(A)(ii)(II) necessarily involves "as an element the use, attempted use, or threatened us of physical force against the person or property of another" per § 924(c)(3)(A).

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Janea L. Lamar (argued) and Erin H. Flynn, Attorneys; Kristen Clarke, Assistant Attorney General; United States Department of Justice, Civil Rights Division, Appellate Section, Washington, D.C.; Tim Tatarka and Paul Vestal, Assistant United States Attorneys, United States Department of Justice, Office of the United States Attorney, Billings, Montana; for Plaintiff-Appellee.

Colin M. Stephens (argued), Stephens Brooke PC, Missoula, Montana, for Defendant-Appellant.

**OPINION**

OWENS, Circuit Judge:

John Russell Howald appeals from his convictions for a federal hate crime under 18 U.S.C. § 249(a)(2) and discharge of a firearm during a crime of violence under 18 U.S.C. § 924(c)(1)(A). He argues that § 249(a)(2) is an unconstitutional exercise of Congress's Commerce Clause power both facially and as applied to him. He also contends that his § 249(a)(2) hate crime conviction is not a predicate crime of violence for § 924(c)(1)(A). We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I. BACKGROUND

### A. Howald's Hateful Attack

On March 22, 2020, Howald decided, in his words, to "rid" his hometown of Basin, Montana, "of the fucking lesbians . . . [and] queers." To carry out this "mission," he

armed himself with three semi-automatic rifles and fired at least seven shots at the house of a local woman. He then left the house and pronounced that "he was going to clean up the town once and for all" of the "lesbians and gays and people that do bad"; that he "just may have fucking killed a lesbian, I hope"; and that "they're gonna die, they're gonna leave, and it's gonna be awesome again." An officer arrived, drew his weapon, and ordered Howald to drop his rifles. Howald refused and, when the officer retreated to his vehicle, left the scene.

The next day, law enforcement arrested Howald and, in the following days and weeks, searched his vehicle and camper. They found several firearms, including the rifle used in the shooting. During a search of the victim's home, officers recovered spent rounds from the rifle and located bullet holes in her fence, yard, deck, and house. Though one of Howald's bullets reached the living room, fortunately, no one was physically injured in the attack.

## B.  The Indictment, Motions to Dismiss, and Trial

In a two-count superseding indictment, a grand jury charged Howald with violating 18 U.S.C. § 249(a)(2) by willfully attempting, through the use of a firearm, to cause bodily injury to a local resident because of their sexual orientation. The indictment specified that the rifle and ammunition had traveled in interstate and foreign commerce. In addition, the government alleged that the offense "included an attempt to kill" the victim. The grand jury also charged Howald with violating 18 U.S.C. § 924(c)(1)(A) for discharging a firearm during and in relation to a crime of violence, with the § 249(a)(2) count serving as the predicate crime.

Howald moved to dismiss both counts of the indictment. He argued that § 249(a)(2) exceeded Congress's Commerce Clause power, and if that charge were invalidated, the § 924(c) charge also would collapse. The district court upheld the charges, reasoning that "the jurisdictional element contained in § 249(a)(2) render[ed] the statute constitutional on its face based on binding U.S. Supreme Court and Ninth Circuit precedent," including *Scarborough v. United States*, 431 U.S. 563, 577 (1977), and *United States v. Alderman*, 565 F.3d 641, 648 (9th Cir. 2009).[1]

In a subsequent motion to dismiss, Howald attacked the § 924(c) charge on a separate ground, contending that a violation of § 249(a)(2) was not a qualifying crime of violence for the § 924(c) charge. The district court rejected that argument, ruling that under the so-called "modified categorical approach," § 249(a)(2) was divisible and that Howald's crime of conviction—an attempt to kill with a dangerous weapon—was a crime of violence, as it necessarily required "the use, attempted use, or threatened use of physical force" as defined in § 924(c)(3)(A).

At trial, the jury heard testimony about the shooting and Howald's explanation (which a bystander had accidentally recorded) for why he tried to kill his neighbor. The jury also received evidence that the various firearms and ammunition—including the rifle and bullets used in the attack—had traveled in interstate and foreign commerce. The jury returned a guilty verdict on both counts, and the district court rejected Howald's posttrial motion for a

---

[1] The district court rejected Howald's as-applied challenge to § 249(a)(2) for similar reasons. It declined to address "whether the impact of bias-motivated violence itself on interstate commerce would suffice to establish jurisdiction" under § 249(a)(2)(B)(iv)(II).

judgment of acquittal on the hate crime conviction. The district court declined to reconsider its previous ruling as to § 249(a)(2)'s facial validity and further determined that, as applied, the government presented "ample evidence"—which Howald "never . . . disputed"—that he had used "multiple firearms, firearm components, and ammunition" that had "traveled in interstate and/or foreign commerce."

Howald received a sentence of 96 months' imprisonment on the hate crime charge (to run concurrent with his state sentence arising out of the same conduct) and 120 months' imprisonment on the § 924(c)(1)(A) charge (to run consecutive to the hate crime sentence and the state sentence).[2]

## II. DISCUSSION

### A. Standards of Review

We review "a district court's denial of a motion to dismiss an indictment on constitutional grounds *de novo*." *Alderman*, 565 F.3d at 644 (citation omitted). A motion for judgment of acquittal based on insufficient evidence is also reviewed de novo. *United States v. Magallon-Jimenez*, 219 F.3d 1109, 1112 (9th Cir. 2000).

In addition, "[w]e review de novo 'whether a criminal conviction is a crime of violence under § 924(c)(3).'" *United States v. Buck*, 23 F.4th 919, 923 (9th Cir. 2022) (citation omitted).

---

[2] The State of Montana charged Howald with eleven counts of criminal endangerment, one count of resisting arrest, and one count of assault on a peace officer. Howald pled no contest and was sentenced to ten years in Montana state prison with five years suspended.

## B.  Section 249(a)(2) is Constitutional

"Due respect for the decisions of a coordinate branch of Government demands that [courts] invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds."  *United States v. Morrison*, 529 U.S. 598, 607 (2000).  Courts may strike down an act of Congress for exceeding its Commerce Clause authority only if the statute bears no rational relation to interstate commerce.  *See Gonzales v. Raich*, 545 U.S. 1, 22 (2005).  A "presumption of constitutionality" guides our inquiry.  *Morrison*, 529 U.S. at 607.

### 1.  Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act

Congress passed the Matthew Shepard and James Byrd, Jr. Hate Crimes Prevention Act ("HCPA"), 18 U.S.C. § 249, in 2009 to address bias-motivated violence.  Pub. L. No. 111-84, 123 Stat. 2835; *see also United States v. Hill*, 927 F.3d 188, 196-97 (4th Cir. 2019) (describing some of the legislative background to the HCPA and noting that "Congress paid close attention to the scope of its authority under the Commerce Clause when it enacted the Hate Crimes Act, which was designed to strengthen federal efforts to combat violent hate crimes").

Section 249(a)(2)(A) of the HCPA makes it a crime "willfully [to] cause[] bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempt[] to cause bodily injury to any person, because of the[ir] actual or perceived . . . sexual orientation."  The statute identifies four jurisdictional "circumstances" (i.e., hooks or elements), one of which the government must prove in every § 249(a)(2) prosecution.  18 U.S.C. § 249(a)(2)(B).  As relevant here,

federal jurisdiction extends to bias-motivated acts where "the defendant employs a firearm, dangerous weapon, explosive or incendiary device, or other weapon that has traveled in interstate or foreign commerce," or where "the conduct . . . otherwise affects interstate or foreign commerce." *Id.* § 249(a)(2)(B)(iii), (iv).[3]

## 2.    Howald's Facial Challenge

Facial challenges, as opposed to as-applied challenges, are "the most difficult to mount successfully." *Willis v. City of Seattle*, 943 F.3d 882, 886 (9th Cir. 2019) (citing *City of Los Angeles v. Patel*, 576 U.S. 409, 415 (2015)). They typically require a showing that no set of circumstances exists under which the law would be valid or that the law lacks a plainly legitimate sweep. *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 615 (2021).

Howald argues that § 249(a)(2) exceeds Congress's power under the Commerce Clause as set out in *United States v. Lopez*, 514 U.S. 549 (1995), and *Morrison*. He contends that "[j]ust as the mere use or presence of a firearm could not sustain federal jurisdiction for a regulation that lacked any other substantial relation to an economic enterprise in *Lopez* and *Morrison*, it cannot be sustained in Howald's case either."

But we have repeatedly distinguished *Lopez* and *Morrison* when the statute at issue—like the one here—contains a jurisdictional element. *See, e.g.*, *United States v. Dorsey*, 418 F.3d 1038, 1045-46 (9th Cir. 2005) ("The *Lopez* decision did not alter th[e] rule that a

---

[3] Section 249(a)(1) of the HCPA concerns hate crimes involving actual or perceived race, color, religion, or national origin. That provision is not at issue here.

jurisdictional element will bring a federal criminal statute within Congress's power under the Commerce Clause."), *abrogated in part on other grounds by Arizona v. Gant*, 556 U.S. 332 (2009).

*Alderman* solidified that rule and set out the framework we apply in Commerce Clause challenges to statutes containing such hooks.  565 F.3d at 645-46, 648.  In that case, we rejected a Commerce Clause challenge to 18 U.S.C. § 931, which prohibits the possession of body armor "sold or offered for sale in interstate commerce."  *Id.* at 642-43. We explained that *Scarborough*, in which "a nearly identical jurisdictional hook has been blessed by the Supreme Court," "controlled."  *Alderman*, 565 F.3d at 648.

In *Scarborough*, the Supreme Court had concluded, as a matter of statutory interpretation, that proof that a firearm had at some point traveled in interstate commerce satisfied the statutorily required nexus between possession of the firearm and commerce in Title VII of the Omnibus Crime Control and Safe Streets Act.  431 U.S. at 575, 577.  The Court reasoned that "there is no question that Congress intended no more than a minimal nexus requirement."  *Id.* at 577.  *Alderman* read *Scarborough* to have "implicitly assumed the constitutionality of the 'in commerce' requirement" and endorsed its "continuing vitality."  565 F.3d at 645; *see also United States v. Patton*, 451 F.3d 615, 634-36 (10th Cir. 2006) (interpreting *Scarborough*, which "assumed that Congress could constitutionally regulate the possession of firearms solely because they had previously moved across state lines," to have been "left intact by

*Lopez*").[4]    For statutes containing a jurisdictional hook, *Alderman* controls.

*Alderman* built on a series of cases that held that a jurisdictional hook requiring the gun used in the offense to have traveled in interstate or foreign commerce eliminates any Commerce Clause concerns.  *See Dorsey*, 418 F.3d at 1045-46 (upholding statute previously struck down in *Lopez* because "the current version includes a 'requirement that [the defendant's] possession of the firearm have a[] concrete tie to interstate commerce'" (alterations in original) (quoting *Lopez*, 514 U.S. at 567)); *United States v. Hanna*, 55 F.3d 1456, 1462 n.2 (9th Cir. 1995) (holding that, post-*Lopez*, the "requirement [in 18 U.S.C. § 922(g)] that the firearm have been, at some time, in interstate commerce is sufficient to establish its constitutionality under the Commerce Clause"). In *Hanna*, we rejected a facial and as-applied challenge to § 922(g)(1) because the gun at issue had previously traveled in interstate commerce and the Commerce Clause requires "only '[a] minimal nexus that the firearm have been, at some time, in interstate commerce.'"  55 F.3d at 1462 (quoting *Scarborough*, 431 U.S. at 575).  Following *Hanna*, we have repeatedly upheld § 922(g), the felon-in-possession statute, against  Commerce  Clause  challenges  because  of  its

---

[4] *See also United States v. Lemons*, 302 F.3d 769, 772-73 (7th Cir. 2002) (noting that "*Scarborough* suggested that prior movement of the firearm in interstate commerce would suffice to meet" the jurisdictional element); *United States v. Smith*, 101 F.3d 202, 215 (1st Cir. 1996) (deciding that *Scarborough*, rather than *Lopez*, applied because of the presence of a jurisdictional hook in the statute); *United States v. Chesney*, 86 F.3d 564, 570-71 (6th Cir. 1996) (adhering to *Scarborough*).

requirement that the gun have traveled in interstate commerce.[5]

In sum, we—as well as our sister circuits—have consistently approved statutes with jurisdictional hooks in the face of Commerce Clause challenges. *See Hill*, 927 F.3d at 204 (identifying no case "in which a federal criminal statute including an interstate commerce jurisdictional element has been held to exceed Congress's authority under the Commerce Clause"). Howald conceded as much during a motion hearing before the district court—"he could not identify any valid case in which a federal court had invalidated a federal criminal statute containing an interstate commerce jurisdictional element."

---

[5] *See, e.g.*, *United States v. Polanco*, 93 F.3d 555, 563 (9th Cir. 1996) (upholding § 922(g)(1) because its "jurisdictional element is a key distinction between § 922(g)(1) and § 922(q)"); *United States v. Miller*, 105 F.3d 552, 555 (9th Cir. 1997) (upholding § 922(g)(1) under *Hanna* and noting that "[t]his minimal nexus requirement does not run afoul of" *Lopez*), *abrogated in part on other grounds by Caron v. United States*, 524 U.S. 308 (1998); *United States v. Jones*, 231 F.3d 508, 514 (9th Cir. 2000) (upholding § 922(g)(8) because the statute's jurisdictional hook "insures, on a case-by-case basis, that a defendant's actions implicate interstate commerce to a constitutionally adequate degree" (quoting *Polanco*, 93 F.3d at 563)); *United States v. Davis*, 242 F.3d 1162, 1162 (9th Cir. 2001) (per curiam) (upholding § 922(g)(1) under *Jones*'s holding that "our prior precedent concerning the facial validity of § 922(g)(8) remains intact even in the wake of the Supreme Court's most recent decisions regarding Congress's Commerce Clause powers"); *United States v. Rousseau*, 257 F.3d 925, 932 (9th Cir. 2001) (upholding § 922(g)(1) under *Jones* and *Davis*); *United States v. Latu*, 479 F.3d 1153, 1156 (9th Cir. 2007) (upholding § 922(g)(5) and rejecting an analogy to *Lopez* and *Morrison* because "[t]he presence of the jurisdictional element satisfies the Commerce Clause concerns articulated in *Lopez*" (citing *Hanna*, 55 F.3d at 1462 n.2)).

The jurisdictional element in § 249(a)(2)(B)(iii)—that a defendant have used a firearm "that has traveled in interstate or foreign commerce"—defeats Howald's facial challenge. *See Alderman*, 565 F.3d at 645-46, 648; *Dorsey*, 418 F.3d at 1045-46; *Hanna*, 55 F.3d at 1462 & n.2.  That hook is nearly identical to those approved of in *Alderman* ("sold or offered for sale, in interstate or foreign commerce"), *Dorsey* ("that has moved in or that otherwise affects interstate or foreign commerce"), and *Hanna* and the ensuing § 922(g) cases ("shipped or transported in interstate or foreign commerce").

Howald has not established that § 249(a)(2) would be invalid in all circumstances or that the law lacks a plainly legitimate sweep.  *See Ams. for Prosperity Found.*, 594 U.S. at 615.  Faced with a "presumption of constitutionality," Howald has not made "a plain showing that Congress has exceeded its constitutional bounds." *Morrison*, 529 U.S. at 607.  Accordingly, we reject his facial challenge to § 249(a)(2).[6]

### 3.    Howald's As-Applied Challenge

We also reject Howald's as-applied challenge to § 249(a)(2); the government proved that the firearms and ammunition used in the offense traveled across state lines.

The evidence at trial showed that Howald wielded an AK-style rifle bearing a Romanian serial number and composed of parts imported from Romania and that Howald fired bullets manufactured in Russia.  This evidence is fatal to Howald's as-applied claim.  *See Hanna*, 55 F.3d at 1462 (rejecting as-applied challenge where "[t]he serial number of

---

[6] Because we uphold § 249(a)(2) based on the jurisdictional element in § 249(a)(2)(B)(iii), we follow the district court and do not reach the "otherwise affects" element in § 249(a)(2)(B)(iv)(II).

the gun confiscated from Hanna in San Francisco revealed it had been stolen in Sparks, Nevada").

Howald contends that the government nevertheless failed to prove that "Howald's action had any effect, substantial or otherwise, on interstate or intrastate commerce." But we have previously rejected such arguments. *See United States v. Rousseau*, 257 F.3d 925, 932-33 (9th Cir. 2001) (rejecting argument that the government "did not prove . . . possession of a firearm had an 'individualized substantial effect on commerce'" because *Scarborough* provides that even a minimal, past connection to interstate commerce is sufficient (citing *Hanna*, 55 F.3d at 1462)); *United States v. Younger*, 398 F.3d 1179, 1193 (9th Cir. 2005) (rejecting argument that "the jurisdictional element of § 922(g) requires proof that . . . defendant's conduct had an actual economic impact" because "[a] one-time past connection to interstate commerce is sufficient under § 922(g)(1)" (quoting *United States v. Beasley*, 346 F.3d 930, 936 (9th Cir. 2003))), *abrogated in part on other grounds by United States v. Duarte*, No. 22-50048, 2024 WL 2068016 (9th Cir. May 9, 2024).

Thus, we affirm Howald's § 249(a)(2) conviction.

### C. Section 249(a)(2) is a "crime of violence" under 18 U.S.C. § 924(c)(1)(A)

Next, Howald claims that the district court erred by denying his motion to dismiss Count 2; in particular, he argues that the predicate § 249(a)(2) offense is not a crime of violence after *United States v. Taylor*, 596 U.S. 845 (2022).

### 1.  Legal Framework

Section 924(c)(1)(A) punishes any person who uses or carries a firearm during and in relation to a crime of violence or drug trafficking crime or who possesses a firearm in furtherance of such a crime.  Section 924(c)(3)(A)—the "elements clause"—defines a crime of violence as a felony which has "as an element the use, attempted use, or threatened use of physical force against the person or property of another."  Our inquiry is whether § 249(a)(2) satisfies that definition.

We apply the categorial approach to determine "whether a crime falls within the elements clause and thus constitutes a crime of violence."  *Buck*, 23 F.4th at 924 (citation omitted).  This doctrine requires courts to analyze whether the elements of the statute—rather than the specific facts of the case—satisfy the definition.  *Id.*  Thus, we must compare the elements of § 249(a)(2) with the definition in § 924(c)(3)(A) to determine whether a violation of the former would necessarily fall within the latter.  In other words, the question is whether a conviction under § 249(a)(2) "necessarily 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'"  *Buck*, 23 F.4th at 924 (citing § 924(c)(3)(A)).

However, if the predicate statute is comprised of various offenses, it is "divisible," so courts must apply the modified categorical approach and determine which specific version of the crime the offender was convicted of before analyzing whether that offense categorically matches the elements clause. *See id.*  A statute is divisible when it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Mathis v. United States*, 579 U.S. 500, 505 (2016).

As *Mathis* explained, "'[e]lements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" *Id.* at 504 (quoting Black's Law Dictionary 634 (10th ed. 2014)). If, however, the statute simply "enumerates various factual means of committing a single element," the statute is not divisible. *Id.* at 506.

If the statute is divisible, a court must look to certain portions of the record, "including charging documents, . . . jury instructions[,] and verdict forms," to determine what crime the defendant was convicted of before conducting the categorical analysis. *Johnson v. United States*, 559 U.S. 133, 144 (2010).

## 2. Divisibility

Section 249(a)(2) is divisible for at least three reasons.

First, the completed offense and the attempted offense in § 249(a)(2) establish alternative versions of the crime. *See United States v. Linehan*, 56 F.4th 693, 700 (9th Cir. 2022) (concluding that 18 U.S.C. § 844(d) "is divisible into completed and attempted offenses"), *cert. denied*, 144 S. Ct. 209 (2023). *Linehan* analogized to *Taylor*, which had interpreted a statute (the Hobbs Act) that imposes penalties for both completed and attempted offenses. *Linehan*, 56 F.4th at 700. Specifically, the Hobbs Act provides that "[w]hoever . . . affects commerce . . . by robbery or extortion or *attempts or conspires so to do* . . . shall be fined under this title or imprisoned not more than twenty years, or both." *Id.* (ellipses in original). *Linehan* reasoned that "[i]n holding that the offense of *attempted* Hobbs Act robbery was not a crime of violence, the [*Taylor*] Court did not suggest that *completed* Hobbs Act robbery must be treated identically, even though both the attempted and completed offenses were

included in the same provision." *Id.*; *see also Taylor*, 596 U.S. at 851 ("Whatever one might say about *completed* Hobbs Act robbery, *attempted* Hobbs Act robbery does not satisfy the elements clause."). Thus, the court in *Linehan* had "little difficulty" concluding that "in the context of § 844(d) an attempt to commit the offense is distinct from the completed offense." 56 F.4th at 700.

Here too, § 249(a)(2) contains both a completed and attempted offense. One can violate § 249(a)(2) by "willfully caus[ing] bodily injury to any person *or*, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, *attempt[ing]* to cause bodily injury." § 249(a)(2)(A) (emphases added). As in *Linehan* and *Taylor*, the attempt offense is distinct from the completed one. *See Linehan*, 56 F.4th at 700 (identifying distinct offenses in the language "transports or receives, *or* attempts to transport or receive, in interstate or foreign commerce").

Second, the attempt offense contains its own additional element that is not present in the completed offense: to be guilty of an attempt, a defendant must have used "fire, a firearm, a dangerous weapon, or an explosive or incendiary device." § 249(a)(2)(A). The completed offense does not require the use of any such fire, weapon, or device. This additional phrase does not simply "enumerate[] various factual means of committing a single element." *Mathis*, 579 U.S. at 506. Rather, at trial on an attempted HCPA offense, the government has to prove—as it did here—that the defendant used such a firearm or other enumerated methods. Therefore, the completed and attempted offenses contain distinct elements, conduct, and proof.

Third, § 249(a)(2) "is divisible into basic and aggravated offenses." *Buck*, 23 F.4th at 925. The basic offense, listed

in § 249(a)(2)(A)(i), is punishable by "not more than 10 years." The aggravated offense, listed in § 249(a)(2)(A)(ii), carries a punishment of "any term of years or for life" if "(I) death results from the offense; or (II) the offense includes kidnapping or an attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse, or an attempt to kill." The basic and aggravated offenses in § 249(a)(2)(A)(i) and (ii), respectively, "are plainly different crimes with different punishments, making these two sets of offenses divisible from each other." *Buck*, 23 F.4th at 925. Moreover, "the aggravated offense is itself further divisible." *Id.* Whether "death results" or another aggravating circumstance is present create disjunctive elements, not alternative means of committing a single offense. *Compare* § 249(a)(2)(A)(ii)(I), *with* (II).

Howald points us to *United States v. Roof*, 10 F.4th 314, 400, 401 & n.63 (4th Cir. 2021) (per curiam), which commented on the divisibility of § 249(a)(1), the HCPA's parallel provision prohibiting hate crimes based on race, color, religion, or national origin. In a footnote with little analysis, the Fourth Circuit did not consider the completed and attempted offenses to represent separate elements. *Id.* at 401 n.63. Nevertheless, the Fourth Circuit did deem § 249(a)(1) divisible based on the divergence between the basic offense (carrying a ten-year maximum sentence) and the aggravated "death results" offense (carrying a maximum sentence of life imprisonment). *Id.* at 400. Thus, *Roof* does not support Howald's argument that § 249(a)(2) is indivisible. Howald also cites *United States v. States*, 72

F.4th 778, 786-87 (7th Cir. 2023). But *States* did not deal with a § 249 conviction or address its divisibility.[7]

In sum, § 249(a)(2) is divisible. The indictment, jury instructions, and verdict form all establish that Howald was convicted of the aggravated attempt offense in § 249(a)(2)(A)(ii)(II) based on an attempt to kill. For instance, on the verdict form, the jury found Howald guilty "of violating Section 249(a)(2)," and, as such, they "further" found that his conduct "included an attempt to kill." *See Buck*, 23 F.4th at 926 (explaining that, if the relevant documents "'referenc[e] one alternative term to the exclusion of all others,' that is an indication that the statute contains different elements" (quoting *Mathis*, 579 U.S. at 519)).

### 3. Categorical Analysis

An attempt to kill in violation of § 249(a)(2)(A)(ii)(II) necessarily involves "as an element the use, attempted use, or threatened use of physical force against the person or property of another" per § 924(c)(3)(A). Thus, Howald's offense of conviction is categorically a crime of violence.

*Attempt to Kill.* Traditionally, an attempt requires "an individual to engage in conduct that reflects a 'substantial step' toward the wrongful end," *Linehan*, 56 F.4th at 702 (quoting *Taylor*, 596 U.S. at 851), and "the mens rea of specific intent," *id.* at 705 (citing *Braxton v. United States*, 500 U.S. 344, 351 n.* (1991)). "To constitute a substantial step, conduct 'must go beyond mere preparation and must be strongly corroborative of the firmness of a defendant's

---

[7] To the extent that *States* suggested *Roof* concluded that § 249(a) is indivisible, *see States*, 72 F.4th at 787, that reading of *Roof* is incorrect, *see Roof*, 10 F.4th at 400 ("Section 249(a)(1) is divisible.").

criminal intent.'" *Id.* at 702 (citation omitted). "Although a murder may be committed without an intent to kill, an attempt to commit murder requires a specific intent to kill." *Braxton*, 500 U.S. at 351 n.\* (quoting 4 C. Torcia, Wharton's Criminal Law § 743, at 572 (14th ed. 1981)). The use of the word "attempt[]" in a criminal statute implicates specific intent "even when the statute did not contain an explicit intent requirement." *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000) (en banc).

*Attempted Use of Force.* The elements clause in § 924(c)(3)(A) is "disjunctive, meaning that a predicate offense can qualify as a categorical match so long as it requires one of the specified uses of force: actual, attempted, or threatened." *Linehan*, 56 F.4th at 701 (addressing a similarly disjunctive elements clause in 18 U.S.C. § 373(a)). Therefore, to serve as a categorical match, an attempt to kill under § 249(a)(2)(A)(ii)(II) need not implicate the actual use of force as long as it requires an attempted or threatened use of physical force. Physical force is defined as "*violent* force," that is, "force capable of causing physical pain or injury to another person." *Johnson*, 559 U.S. at 140; *see also Stokeling v. United States*, 586 U.S. 73, 84 (2019) (explaining that *Johnson* "does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality").

*Categorical Match.* Attempting to kill someone in violation of § 249(a)(2)(A)(ii)(II) categorically implicates the attempted use of physical force; a person who has "taken a substantial step toward causing the death of another with the specific intent to cause that person's death" has taken a

substantial step toward the use of violent force.[8] *United States v. Studhorse*, 883 F.3d 1198, 1205-06 (9th Cir. 2018). As we explained in *Studhorse*, "such an intentional act, 'strongly corroborative' as it must have been of [a] purpose to cause death, necessarily involved the use, attempted use, or threatened use of force." *Id.* Thus, "'[e]ven if [the defendant] took only a slight, nonviolent act with the intent to cause another's death, that act would pose a threat of violent force sufficient to satisfy' the definition of a crime of violence" in § 924(c)(3)(A). *Dorsey v. United States*, 76 F.4th 1277, 1283 (9th Cir. 2023) (second alteration in original) (quoting *Studhorse*, 883 F.3d at 1206), *cert. denied*, 144 S. Ct. 1005 (2024).

Accordingly, we have determined that other statutes criminalizing an attempt to kill are crimes of violence under § 924(c)(3)(A) or substantially similar elements clauses. *See, e.g.*, *id.* at 1283-84 (witness tampering by attempting to kill a witness in violation of 18 U.S.C. § 1512(a)(1)); *Studhorse*, 883 F.3d at 1205-06 (attempted first-degree murder under Washington law); *cf. Linehan*, 56 F.4th at 701-06 (soliciting the transportation of an explosive with the knowledge or intent that it would be used to kill, injure, or intimidate any individual or damage any property in violation of §§ 373(a) and 844(d)). A person cannot attempt to kill without at least attempting to use force.

Howald argues that the Supreme Court's recent decision in *Taylor*, which held that attempted Hobbs Act robbery does not qualify as a crime of violence under § 924(c)(3)(A),

---

[8] Because we conclude that an attempt to kill in § 249(a)(2)(A)(ii)(II) requires an attempted use of physical force, we do not reach whether such a violation also would implicate either an actual or a threatened use of force. *See Linehan*, 56 F.4th at 701.

undermines that conclusion. *See Taylor*, 596 U.S. at 851-52. We have already rejected this argument in *Dorsey*. 76 F.4th at 1283-84 ("We join our sister circuits in concluding that *Taylor* does not require us to reconsider our precedent holding that attempted killing is a crime of violence." (citing *Alvarado-Linares v. United States*, 44 F.4th 1334, 1346-47 (11th Cir. 2022))). *Taylor*'s holding turned on the fact that a person can commit Hobbs Act robbery by attempting to *threaten* force and therefore never getting "to the point of threatening the use of force against anyone." 596 U.S. at 852. But § 249(a)(2) is not a threats offense; for Howald's offense of conviction, the government must prove that the defendant attempted to kill another person. *See Alvarado-Linares*, 44 F.4th at 1346 (distinguishing *Taylor* because, "unlike Hobbs Act robbery, a criminal cannot commit murder by threat"); *States*, 72 F.4th at 787-90 (holding that, after *Taylor*, attempted murder of a federal officer in violation of 18 U.S.C. §§ 1113-14 is a crime of violence under § 924(c)(3)(A)).

Howald also asserts that the amount of force contemplated by the elements clause is "something stronger and more violent than mere bodily injury." However, an attempt to cause bodily injury as aggravated by an attempt to kill implicates violent force sufficient to satisfy even Howald's reading of the elements clause. *See Dorsey*, 76 F.4th at 1283. Indeed, we have repeatedly held that "in the context of assault statutes, bodily injury entails the use of violent, physical force." *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1291 (9th Cir. 2017). "[F]orce capable of causing physical pain or injury," *Johnson*, 559 U.S. at 140, encompasses an attempt to cause another person's death. *See Calvillo-Palacios*, 860 F.3d at 1291-92 (rejecting argument that bodily injury that creates a substantial risk of

death or causes death does not qualify as violent, physical force under *Johnson*).

Howald theorizes that § 249(a)(2) could be violated by a failure to act, for instance, and as such would not rise to the level of force required by the elements clause. But, again, "we have already rejected" similar such theories, at least in the context of threat and assault statutes. *Calvillo-Palacios*, 860 F.3d at 1290 & n.5; *see also id.* at 1291 & n.9. As we explained in *Calvillo-Palacios*, *United States v. Castleman*, 572 U.S. 157 (2014), "dispose[d] of the idea that one could knowingly or intentionally cause bodily injury without the use of *some type* of physical force." 860 F.3d at 1291; *see also Castleman*, 572 U.S. at 170-71 ("That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter."). And, notably, in *Studhorse*, we relied on *Castleman* to hold that attempted murder was a crime of violence because an "intentional act, 'strongly corroborative' as it must have been of [a] purpose to cause death," necessarily entailed violent force under an elements clause similar to the one at issue here. *Studhorse*, 883 F.3d at 1204-06.

Thus, because "even the least culpable" acts criminalized by the attempt-to-kill offense in § 249(a)(2)(A)(ii)(II) require a substantial step toward the use of force, that offense qualifies as a crime of violence for a § 924(c) charge. *Buck*, 23 F.4th at 924 (quoting *Borden v. United States*, 593 U.S. 420, 424 (2021) (plurality opinion)). The district court did not err in denying Howald's motion to dismiss the indictment on Count 2.

# III. CONCLUSION

We reject Howald's claims on appeal and affirm his convictions on both counts. Section 249(a)(2) is constitutional under the Commerce Clause and a violation of that provision based on an attempt to kill is a "crime of violence" as defined by § 924(c)(3)(A).

**AFFIRMED.**